# Staunton.

## SHULTZ ET ALS. V. H. HANSBROUGH.

### October 16, 1882.

PRACTICE IN CHANCERY—*Creditors' bill—Construction of decree—Case at bar.*—H files his bill to enforce his and the liens of other judgment creditors on the lands of S. An account of the liens and lands is taken. Report shows numerous liens and parcels of land. H's judgment was a lien on all the lands, and a vendor's lien on the parcel first aliened by S—viz: to R. There were also three deeds of trust of different dates; the first and third securing each one debt on one parcel; and the second securing on all the lands numerous debts, as well judgments as debts not reduced to judgments. But this second trust deed was not enforceable until 3d May, 1882. Besides H's, there was no lien on R's parcel. Exceptions to report being overruled, the circuit court decreed that, unless within 60 days, S paid the costs of the suit, the judgment of H and the other judgments appearing from the report to be chargeable on the lands of S, then commissioners should sell so much of the lands of S, described in the report, as might be necessary to pay said costs and judgments, but should sell *first* so much of the land conveyed by S to R as might be necessary to pay said costs and the judgment of H; and *then* sell so much of the other lands of S as might be necessary to pay the balance (if any) of the judgment of H, and the other judgments chargeable thereon as set forth in the report. On appeal by defendants—

HELD :

1. By the plain meaning and import of the language of the decree, R could only prevent the sale of his land under it by the payment of *all* the judgments reported by the master and all the costs of the suit.

2. Under the circumstances of this case, any decree requiring and directing the sale of R's land, unless he paid the costs of the suit and *all* of the judgments, would be erroneous.

3. In such case, this court will not construe, amend and affirm the decree (though it be erroneous in no other particular), but will reverse it with costs to the appellants and remand it to the court below to proceed with in conformity with these views.

VOL. LXXVI—103

Appeal of Joseph H. Shultz, John W. Johnston, trustee, William W. Gordon, Harrison Robertson, and Charles S. Carrington, from a decree of the circuit court of Botetourt county, rendered 2d June, 1881, in a suit in equity therein pending, in which Hiram Hansbrough is complainant and the appellants and others are defendants. This is a sequel to the case of *Shultz* v. *Hansbrough*, 33 Gratt. 567. The object of the suit is to enforce the lien of a judgment of the said circuit court on its law side, rendered 28th October, 1868, for $11,747.44, with interest from 15th October, 1867, and $7.27 costs, on which the master ascertained the balance unpaid to be $12,321.62, as of 14th December, 1880, in favor of said Hansbrough against said Shultz and George S. Penn.

The usual account of liens, and of all the lands liable to those liens, was taken, the report thereof confirmed, and a decree of sale entered 4th June, 1879. From that decree the defendants appealed; and for irregularities in the account, and mistake in the order wherein one parcel of 4,000 acres of land which said Shultz had on 22d May, 1877 (before any other of his lands were aliened), conveyed to said Robertson, subject to lien reserved for the unpaid purchase money represented by the judgment of said Hansbrough, the said decree was reversed, and the cause remanded to be further proceeded with in conformity with the views of this court. In obedience thereto, proceedings were had in the circuit court. A new report of liens and lands was made. The circuit court confirmed the report, and entered the following decree of sale, viz:

This day came these causes on again to be heard on the papers therein formerly read, and on the last report filed 16th May, 1881, by Master Commissioner Wm. B. Simmons, with J. H. Shultz's exceptions thereto, and was argued by counsel. Whereupon the court, considering the causes and the said report (to which exceptions have been filed), doth

adjudge, order and decree that the exceptions be overruled, and that the report be, and it hereby is, confirmed. And the court doth considar that the judgment of the complainant, Hansbrough, is a lien on all of the real estate which was owned by the defendant Shultz at its date, and on all which he has since acquired, as set forth in the first report, and is also a lien on all of the real estate owned by the defendant Penn at the day of the judgment, which real estate is also set forth in the first report; and that for the amount of the said judgment of complainant, Hansbrough, there is also a vendor's lien on the land which was conveyed by defendant Shultz to the defendant Harrison Robertson, by deed, bearing date 22d May, 1877, and that the land last mentioned is first liable to the satisfaction of the said judgment, and should be subjected thereto before the other lands aliened by said Shultz should be resorted to for that purpose.

And the court, considering that the debts and the amounts thereof chargeable on the said lands, and especially the debts secured by the deed of trust executed to Lewis Linkenhoker, trustee, dated 3d May, 1878, are now ascertained and determined by the last report of Commissioner Simmons, with such certainty as to authorize a sale of said lands, and that it appears that the rents and profits of the real estate aforesaid of the said defendant Shultz will not, in the period of five years, satisfy the costs of this suit, the expenses of the sale, and the principal, interest, and the costs of the said judgment of complainant Hansbrough, and of the judgment of the complainant Krise, and of the other judgments which are chargeable on the said lands of defendant Shultz, as set forth in the said last report, therefore it is adjudged, ordered and decreed that unless, within the period of sixty days from the rising of this court, the said Shultz, or some one for him, shall pay unto G. W. Hansbrough, the attorney for the complainant Hansbrough

the costs of this suit, and the principal, interest, and costs of the latter's said judgment, and shall pay to the said P. A. Krise or his attorney, J. H. H. Figgat, the amount of the principal, interest and costs of the judgment of said Krise, and to the persons severally thereto entitled, or to their attorneys or assignees, the other judgments which it appears from the said report are chargeable on the said lands of the said Shultz, then L. C. Hansbrough, Esq., and Lewis Linkenhoker, Esq., who are hereby appointed special commissioners to execute this decree, either of whom may act, shall, after first advertising the time, place and terms of sale in the *Fincastle Herald,* and such other newspapers published in this or neighboring counties, and in the cities of Lynchburg and Richmond, as the commissioners may deem judicious, proceed, in front of the "Botetourt house," in this county, or on the premises, to sell at public auction, to the highest bidder, the said lands of the defendant Shultz, described in the first report of Commissioner Simmons, or so much of the said lands as may be necessary to pay the costs of these suits, the expenses of the sales, and the principal, interest, and costs of the said judgments chargeable thereon as aforesaid, but shall sell *first* the said land conveyed by said Shultz to said Robertson 22d May, 1877, or so much thereof as shall be necessary to pay the costs of the suit, the expenses of the sale of this said land, and the principal, interest, and costs of the judgment of said complainant Hansbrough, and shall *then* sell so much of the other lands of the said Shultz, in said first report described, as may be necessary to satisfy the balance of the costs, expenses and judgment last aforesaid, which the proceeds of the said Robertson land may be inadequate to satisfy, and also as may be necessary to satisfy the other judgments chargeable thereon, as set forth in the said last report, on the terms following, to-wit: Cash enough to pay the costs of the suit and of the sale, and as to the balance of the

purchase money, on a credit of one, two and three years, with interest from the day of sale, taking from the several purchasers bonds with approved personal security for the deferred instalments of the purchase money, and reserving title until the payment of the whole, and the right to re-sell at the risk and loss of the purchaser, in case of non-compliance with the terms of sale by the purchaser. And it is further adjudged, ordered and decreed that if, in the judgment of the commissioners, or either of them, it would be advantageous to those interested in the sales that the lands, or any of them, of defendant Shultz should be sur-veyed and plotted before the day of sale, they are author-ized to have such survey and plots thereof made, and the expenses thereof defrayed out of the proceeds of the sale. And they are also authorized to sell the said real estate in separate parcels or lots as they may deem advantageous to those interested. It is further adjudged, ordered and de-creed that before making sale as aforesaid, the special com-missioners (or the one acting) shall, in the clerk's office of this court, before the clerk thereof, enter into bond in the penalty of $5,000, with approved security, payable to the Commonwealth of Virginia, and conditioned according to law.

It appearing to the court from the bill and proceedings in this cause that the defendant George S. Penn is only a surety of and for the defendant Shultz in and upon the said judgment of the complainant Hansbrough, no decree for the sale of any part of the said surety's estate is now entered, on the supposition that the real estate of the prin-cipal will suffice to pay the said judgment, but in the event that supposition should prove erroneous, then the right is reserved to the said complainant Hansbrough to subject to sale so much of the surety's real estate as may be neces-sary to satisfy any portion of the judgment which may re-main unpaid, but said commissioners are directed to make,

until further order, no sale of the interests of the defendant Shultz in the mineral lands standing in the name of Harrison Robertson and Chas. S. Carrington, not including, however, in this clause the land conveyed by said Shultz to said Robertson by deed dated 22d May, 1877.

From this decree the said Shultz, and others also appealed to this court. The remaining facts and proceedings are fully stated in the opinion.

*Edmund Pendleton* and *F. W. Christian*, for the appellants.

*G. W. & L. C. Hansbrough*, for the appellee.

Of the seven assignments of error, it seems necessary to notice only the last, viz:

7. "The only lien on the Robertson tract is the Hansbrough judgment, and yet the decree is so framed that, in order to prevent the sale thereof, Robertson is required to pay all costs of the suit, the expenses of the sale, and also every judgment against Shultz."

Answer—This is a misreading of the decree. Construe it as an entirety, and it is manifest that the Robertson land is only held bound for the Hansbrough judgment, the costs of the suit and the expenses of a sale, if there be a sale; and on payment thereof, the land would be free from all liability. Should Robertson once pay those costs and that judgment, the court would interpose to prevent a sale. The language of the decree, looked on as a whole, plainly means that; and the cavilling interpretation which misconstrues its meaning for its own purposes—to be that Robertson shall pay off all the judgment liens on Shultz's lands in order to relieve his own land from sale—should not be allowed.

Repeatedly the decree directs the sale of the lands, to satisfy the judgments *chargeable thereon, as set forth in the reports.*

Upon the whole, twist and contort the matters as the appellants, in their ingenuity—bent on delay and hindrance of the appellee's just claim—may, there is certainly no such substantial error in the decree complained of as will warrant this court in reversing the same to the great injury, by delay and costs, of the appellee. At most, it need only be construed and amended.

The reproach of technical hindrance and delay in the enforcement of just debts in this Commonwealth ought to be removed, and this is a case in which the beginning and example of such laudable action should be taken.

ANDERSON, J., delivered the opinion of the court.

The decree of May 31, 1881, appealed from, overrules all the exceptions of Shultz to the master's report, filed 16th of May, 1881, and confirms the same. It then declares that the complainant by his judgment has a lien upon all the lands of Shultz, and upon those which he aliened subsequently to the date of complainant's judgment, and that he is entitled to the vendor's lien upon the Gorgas land, which Mrs. Gorgas conveyed to Shultz, reserving a lien for the purchase money, and Shultz afterwards conveyed to Harrison Robertson, by deed bearing date May 22, 1877, subject to the vendor's lien for the purchase money which was then due to complainant, and which Robertson undertook to pay; the complainant's said judgment being for the said purchase money. And the decree held, as it had been decided by this court, when the case was before it on a former appeal, that the said Gorgas land was first liable to be sold to satisfy complainant's said judgment.

The decree then proceeds: And the court considering that the debts and the amounts thereof chargeable on the lands, and especially the debts secured by the deed of trust of 3d of May, 1878, are ascertained and determined by the

last report of the commissioner with such certainty as to authorize a sale of said lands; and that the rents and profits of the said real estate of said Shultz will not in five years satisfy the costs of this suit, the expenses of the sale, and principal, interest and costs of said judgment of Hansbrough, and of the judgment of complainant Krise, and of the other judgments chargeable on the land of Shultz as set forth in said last report. It is therefore adjudged, ordered, and decreed that unless within sixty days from the rising of the court the said Shultz, or some one for him, shall pay to Hansbrough's attorney the costs of this suit, and the principal, interest and costs of his said judgment, and shall pay to Krise, or his attorney, the amount of principal and interest and costs of his judgment, and to the persons thereto severally entitled, or to their attorneys or assignees, the other judgments, which it appears from the said report are chargeable on the said lands of Shultz. (It appears from the report that all the judgments are chargeable on all his lands.) If this is not done, what then? The commissioners, who are appointed for the purpose, are *imperatively required to sell all his* lands, but to sell first the land which he conveyed to Harrison Robertson by deed dated May 22d, 1877, upon which the complainant had the vendor's lien. The only exception is the interest of Shultz in the mineral lands, standing in the name of Harrison Robertson and Chas. S. Carrington, which, by the last clause in the decree, the commissioners are directed not to sell until further order. But the land conveyed by Shultz to Robertson is not included in the exception.

It is, I think, unquestionable that by the plain meaning and import of the language of the decree, Robertson could only prevent the sale of his land under it by the payment of all the judgments reported by the master in his last report, and all the costs of the suit. This is the 7th assignment of error in the appellant's petition.

Does the decree carry out the intention of the court?   It appears from the record that the decree which had been prepared, before it was entered, had been shown to the counsel of Shultz, and that he filed six objections to it in writing, which he asked might also be considered as exceptions, as far as applicable, to the master's last report. And that to each of said exceptions or objections to the decree proposed, the counsel for complainant made their reply in writing.

The first objection, of course, for Shultz is, that the decree proposes to sell all the lands owned by him for the satisfaction of all the debts reported against him by the master.   Much the greater portion of these debts are liens· on the lands only by reason of being secured by the deed of trust of May, 1878; and by the terms of that deed the· debtor, being entitled to hold the possession of those lands until May, 1882, the creditors secured by the deed of trust have no right to enforce it by a decree of sale at that time— May, 1881—and that in fact none of them are asking for such a decree.

The reply admits that the first objection to the decree, as respects the decree of sale of the debts, *other than judgments,* were not paid, is well taken, and the decree in that respect has been modified.   The decree, as entered, does not require the sale of lands to satisfy the deed of trust creditors.   The reply goes on further to say, "The court, however, must of necessity decree the satisfaction of the judgment liens in the order of their respective priorities, respecting the rights of the trust creditors so far as entitled to respect."

The second objection is: "In order to avoid a sale of his lands, this exceptant is required not only to pay Hiram Hansbrough the large debt due to him, but also all the other debts reported by Master Commissioner Simmons,·

many of which, under the terms of the deed of trust, are not yet enforceable."

To this objection, the most material and important, the only reply is, that "the second point is answered in the answer to the first point." The first point was, as we have seen, directed against the sale to satisfy the debts secured by the deed of trust. The reply admits it was well taken as respects a decree of sale in case debts, *other than the judgments*, were not paid—impliedly insisting that a decree of sale, in case *judgments* were not paid, was proper, and would be insisted on. And this is, in fact, the reply to the second objection. Of course both the objections, and the replies, were laid before the court; and it seems that the court adopted the replies to the first and second objections, and modified the decree only so far as the replies consented to it. That is, it did not decree a sale if the trust debts were not paid, but did decree a sale if the judgments were not paid. It seems that this point was fairly and pointedly and directly brought to the attention of the court by the second objection of Shultz's counsel to a decree for a sale of the land unless the judgments were paid, and the reply took issue upon it, while it conceded that a decree for sale if the *trust* debts were not paid should not be made; and the court decided the point upon which issue was taken between the counsel in favor of the complainant's counsel, and decreed that unless the costs of the suit and all the judgments were paid, all the lands should be sold—the Gorgas or Robertson land first.

The third, fourth and fifth exceptions were yielded to by complainants' counsel, and the decree as entered was modified accordingly. The sixth objection was overruled, in reference to which we may have more to say hereafter.

It has been said that Shultz ought to have made his objection to the decree as it was modified, before it was entered—that that was the time to make the objection. It

does not appear that his counsel ever saw the decree after it was modified before it was entered. But if he had, he had made his objection clearly and pointedly in writing before it was modified, and the court overruled his objection. And why should he have made it again? The question was fairly raised and submitted to the court, and was decided against him, and why should he have made it again?

The issue was made and submitted to the court by the counsel of both parties, and the court passed judgment upon it, which was in favor of complainant's counsel's contention, as is shown by the decree which the court directed to be entered, which carries out what complainant's counsel contended for. And it seems to me that it cannot be held that the court did not intend to decree what the record shows was directly and pointedly in issue before it, and to which its attention was specially called, and which it did decree, because of its unreasonableness—so unreasonable as to draw from the appellant's counsel the ingenuous admission that he did not believe the court intended it. But I take it that the appellate court cannot decide a cause against a party upon the opinion of his counsel, which is adverse to him, but the decision must be founded upon the record. It is evident that it was merely the opinion of the counsel that if the court had understood the effect and operation of the decree upon the rights and interests of Robertson, which were so unreasonable, he would not have decreed as he did. And it seems that is no good reason, even if he was correct in that opinion, why the decree should· not be reversed. Every decree that is reversed, operates more or less unreasonably to the prejudice of the appellant; and the greater its unreasonableness and oppressiveness, the stronger is the appeal to the appellate court to reverse it.

However unreasonable the requirement of the decree in

question, it seems to comport with its direction that all the lands which were subject to the judgment liens should be sold, and believing that the land in question was subject to the liens of the other judgments, besides the plaintiff's, it might, without due consideration, have concluded, though erroneously, that it was necessary to require the payment of all the judgments to avoid the sale of it.

The land was ultimately bound for other judgment liens, but only those which ante-dated the conveyance to Robertson, and it was not bound for those judgments until all the unaliened lands of Shultz had been sold to satisfy them, and proved to be insufficient, and then only in the inverse order of the alienations, and not until all the lands subsequently aliened had been exhausted without entirely satisfying the liens. Robertson's land could only be liable, then, for what remained unsatisfied.

But it appears that Shultz had an interest in this tract of land also; that he conveyed it to Robertson, for the joint benefit of Robertson, Carrington, Gordon and himself; and that his interest, whatever it is, was conveyed by him, by the deed of trust of May 3d, 1878, to secure the payment of his debts therein mentioned. And if complainant's judgment was satisfied, without subjecting the land to the payment of it, the interest of Shultz therein, which seems to be only an equitable interest, would be subject to the debts secured by the said deed of trust; and not having been aliened, would be subject to the lien of judgments which ante-dated the deed of trust, and which would have a preference over the deed of trust.

The tract of land in question was not exempted from the decree of sale, but was directed to be sold first. If the complainant's judgment was paid without subjecting the land, then Robertson would hold it for himself and associates, released from that lien; but it was still liable, in the manner and to the extent we have explained, to judg-

ment liens against Shultz. And the court, without looking carefully to the nature and extent of those liens, may have assumed that it could not be entirely released until all the judgment liens were satisfied. If that was the view of the court, I think it will be seen from what has been said that it was erroneous. If it was correct, then it might have been proper, as the land had been decreed to be sold, to have released it from sale, not only by the payment of the complainant, but all the other judgments.

I think it would have been error, in the then state of the case, to have decreed the sale of it to satisfy the judgments which ante-dated the conveyance to Robertson, or to satisfy any portion of those judgments that might remain unpaid after all the lands which Shultz owned, and all the lands he had aliened subsequently to his conveyance to Robertson, had been sold and applied to their satisfaction. It was proposed to have decreed the tract of land in question to be sold first to satisfy complainant's judgment unless the judgment was paid before the sale was made. But in the present state of the case it would have been premature and error to have decreed the sale of it to satisfy any of the other judgments, and still more manifestly erroneous to satisfy all of them. And the decree requiring the land in question to be sold, and sold first, unless Shultz, or some one for him, paid the costs of the suit, and all the judgments, is palpably erroneous.

I think the decree should have directed that each tract of land, and town lot, should be sold separately, and the price for which each sold reported to the court, so as to enable the court, when the report of sales is made, to make a proper application of the funds according to the priority of the liens on the several properties sold.

It seems to have been the purpose of the decree that all the lands should be sold except those which were the only security to the deed of trust creditors. The liens of the

deeds of trust of February 25th, 1878, and of 3d of May, 1878, have priority to some of the judgments. And judgments to the amount of about $4,213, besides the complainant's judgment, have priority of lien to the deed of trust of 3d of May, 1878.

The lands conveyed by the said deed of trust to secure the trust creditors, upon the principle of marshaling, ought not to be sold to satisfy the judgments which ante-date the deed of trust, until all the lands upon which such judgments have a lien, but which are not conveyed by the deed of trust, are first sold, and then only so much of them as may be necessary to satisfy any balance which may still be due on the said judgments.

The objection to the sale of the lands secured by the deed of trust is now removed by the expiration of the time allowed the grantor, Shultz, to retain possession, and they should now be sold; and it seems to me it would be best for the creditors that the decree for the sale of them, and all the lands of the debtor, or so much of them as may be necessary to pay his debts, should be directed to be sold under one and the same decree, which would facilitate, and I think expedite, the adjustment of the whole matter, and enable the court to make an intelligent and just application of the proceeds of the sales to the creditors, according to their respective rights and priorities.

But it will be for the court below, when the case goes back, to determine, with due regard to the rights and interests of all parties concerned, what its action shall be, to the end that there may be a speedy and final settlement of all matters involved in the suit, upon just and equitable principles.

Now, as to the question whether it is better to amend or construe, and affirm, or to reverse? From the view of the case I have taken, I do not think there is any ground for construing the decree to mean the reverse of what its lan-

guage plainly imports, and which, I think, the record shows carries out what was, in fact, the judgment of the court. And I think it is more than questionable whether it is a proper case to *amend* and affirm. We are all agreed, that a decree requiring and directing the sale of the Robertson land, unless he paid the costs of the suit and all the judgments, is erroneous. Unless the decree, as it is, was corrected in that respect, the commissioners of sale would have had no discretion, but would have been compelled to have set up at public auction, and sold to the highest bidder, Robertson's land, though Robertson was ready and offered to pay them the amount of complainant's judgment, principal, interest, and costs. Unless he paid them all the judgments and all the costs, Shultz and Robertson's remedy was only by appeal to this court; for the commissioners had no right or discretion to construe away that provision of the decree, or to amend it. If it could be construed at all, or amended, it could only be done by the court. Consequently Shultz and Robertson, in conjunction with Gordon and Carrington, and Johnston, trustee, all appealed to this court for relief. They have undoubtedly incurred costs, and it seems to me that upon the case as presented by the record, whilst their right to the correction of the decree is conceded, it would not be right, by construing or amending, if it could be done, and an affirmance, to mulct them in the costs of the proceedings.

I am of opinion that a reversal of the decree, and entering such decree here for the sale of the Robertson land, to satisfy complainant's judgment and the costs attending the sales, unless Shultz, or some one for him, before the day of sale, pays the same, as the court below ought to have made, and remanding the cause, for such proceedings to be had therein as to the other lien creditors as may be right and proper, and as may be necessary for the execution of the decree of this court for the enforcement of complainant's judg-

ment, in order to a final adjustment of all matters in controversy, need cause but little more delay to complainant, if any, than an affirmance, and that it would greatly facilitate the final disposition and adjustment of the whole case, fairly and satisfactorily to all parties, upon just and equitable principles.

Upon the whole I am of opinion to reverse the decree of the circuit court and to enter such decree here as ought to have been entered by the court below, and to remand the cause to the circuit court for further proceedings in order to a final decree.

STAPLES, J., dissented.

REVERSED IN PART, BUT AFFIRMED AS TO THE RESIDUE.