# Richmond

## HATCHER S. SEWARD v. AMERICAN HARDWARE COMPANY, INC., AND OTHERS.

### November 16, 1933.

Present, Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Charles Hall Davis* and *William Old*, for the appellant.

*J. Gordon Bohannan*, for the appellee.

HOLT, J., delivered the opinion of the court.

This is a statutory proceeding. Code, section 3804. The petitioner prays that an election of the directors of the defendant company, held on February 14, 1933, be vacated and annulled; that a certain voting trust agreement be construed; that a new election of directors be ordered; that the trustees in said voting trust agreement be directed to vote for certain named gentlemen and that these trustees themselves be removed and others substituted.

The defendants named in the said petition, with the exception of S. West Holden, moved the court to dismiss it, assigning the general ground that the allegations of the said petition were not sufficient in law to impeach the validity of the election or to justify the court or judge in ordering a new election or in granting any relief within the contemplation of section 3804 of the Code of Virginia. On motion of the petitioner, the defendants were required to state more specifically the grounds of their motion. This was done.

For the purposes of this motion the defendants admit and concede that they admit all averments of material facts. Of course, they do not admit inferences or conclusions of law.

Many years ago petitioner's father made trunks in Petersburg. His business was highly successful. Afterwards, in 1895, it was incorporated under the name of Seward Trunk and Bag Company, and was operated exclusively by the founder and members of his family. About twenty years ago he retired from active business and transferred it to his sons, three of whom, including the petitioner, thereafter directed, managed and controlled it. Certain other bag and trunk companies were acquired and in 1912 the American Hardware Company, Inc., was organized as a holding company, and operations under the same management were continued until 1928, when it was merged or consolidated with three other trunk and bag companies.

Three contracts deal generally with this subject, namely, a preliminary contract of date October 4, 1927, an agreement dated March 28, 1928, and a voting trust agreement of date March 20, 1928. The last two are part and parcel of one transaction and were executed practically simultaneously, although that of March 28th must have been drafted before March 20th.

They set out in much detail what was done, and although voluminous they must be read in full and together

before any satisfactory understanding of the issues here is possible, and for that reason are copied into a footnote.[1]

The consolidated companies were American Hardware Company, Incorporated, Totty Trunk and Bag Company, Incorporated, Independent Trunk and Bag Company, Incorporated, and Holden Trunk and Bag Company, Incorporated.

Paragraph 5 of the preliminary contract outlines the plan proposed and reads as follows:

"The board of directors shall consist of eight members: Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, Henry L. Plummer, S. West Holden and R. Hamilton Seabury, should the Petersburg Luggage Company become a party to this agreement, otherwise his place shall be filled by W. A. Totty, Jr.; and a voting trust agreement is to be entered into whereby the respective *interest* are at all times to be represented

---

[1] "Memorandum of agreement made this 4th day of October, 1927, by and between the American Hardware Company, Incorporated, acting herein by Hatcher S. Seward, Harvey Seward, George S. Bernard and Fred Pilcher; The Totty Trunk and Bag Company, Incorporated, acting herein by W. A. Totty and W. A. Totty, Jr.; the Independent Trunk and Bag Company, Incorporated, acting herein by Henry L. Plummer, and the Holden Trunk and Bag Company, Incorporated, acting herein by S. West Holden,

"Witnesseth: That in consideration of the mutual covenants and agreements of the parties, the said corporation agrees as follows:

"(1) That on or before December 31, 1927, to merge or consolidate the several corporations into one corporation, or to sell to a corporation to be organized the assets of the respective corporations named above, upon the following basis:

"An appraisal by disinterested parties, to be agreed upon by the parties hereto, of the tangible assets of the respective corporations, the intangible assets to be taken at the face value thereof and to be guaranteed by the corporation to which they are due.

"(2) The tangible and intangible assets are to be conveyed and delivered to the merged corporation or the new corporation at the appraised value of the tangibles and the face value of the intangibles, and each of the respective corporations is to receive for each one hundred dollars ($100.00) of the appraised value of the tangible assets plus the face value of its intangible assets, one (1) share of 7% cumulative preferred stock of the par value of one hundred dollars ($100.00) and one (1) share of no-par-value common stock of the merged or new corporation, after deducting from such ascertained values the liabilities of the respective corporations.

"(3) Ten per cent (10%) of the preferred and common stock issued for the intangible shall be redelivered to the corporation, to be

on the board by the same number of directors herein provided."

In the agreement dated March 28, 1928, the American Hardware Company, Incorporated, as a party of the first part, the stockholders of the Independent Trunk and Bag Company, Incorporated, the stockholders of the Totty Trunk and' Bag Company, Incorporated, and the stockholders of the Holden Trunk and Bag Company, Incorporated, as parties of the second part; and Harvey Seward, Hatcher S. Seward and Joseph W. Seward as parties of the third part, after making reference to the contract of October 4, 1927, proceeded to set out the details under which consolidation shall be made. Paragraph 8 of that contract reads as follows:

"The parties of the third part, holding together a majority of shares of the American Company, in considera-

---

held as a guarantee for such intangibles, and at the end of a period of eighteen months there shall be a settlement between the parties.

"(4) No value shall be placed upon any intangible assets except accounts and notes receivable.

"(5) The board of directors shall consist of eight members: Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, Henry L. Plummer, S. West Holden, and R. Hamilton Seabury, should the Petersburg Luggage Company become a party to this agreement, otherwise his place shall be filled by W. A. Totty, Jr., and a voting trust agreement is to be entered into whereby the respective *interest* are at all times to be represented on the board by the same number of directors herein provided.

"(6) The common stock is to be the sole voting stock of the corporation, unless for a period of one year the corporation shall fail to pay dividends on its preferred stock, in which event the preferred stock shall have the same voting power as the common stock until the dividend is restored and past due dividends paid.

"(7) Harvey Seward and Hatcher S. Seward, for themselves and as the representatives of the interest of J. W. Seward, agree that within a period of thirty days from the date of the issue of stock of the merged or new corporation, they will sell to any of the other six directors named above, in proportion to their respective holdings in the merged or new corporation, such number of shares of common stock as each of them may desire to purchase, the total not to exceed one-half of the common stock holdings of the Seward interests, at the price of fifteen dollars ($15.00) per share, and will accept as collateral for the obligation of such purchaser the shares of common stock so purchased and one (1) share of preferred stock for each ten (10) shares of common stock so purchased, the obligation to be evidenced by note of the purchaser to bear interest at six per cent (6%) and to run not exceeding ten (10) years.

tion of the promise herein made by the American Company and the stockholders of the Independent Company, the Totty Company and the Holden Company, jointly and severally agree that Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., H. L Plummer and S. West Holden shall be elected directors of the American Company after this contract has been duly executed by all of the parties, if not then directors of said company, and said parties further agree that by means of a voting trust to be executed by them and by George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., H. L. Plummer and S. West Holden and by such stockholders of the American Company as may care to become parties thereto, the persons herein agreed upon as directors shall be continued as such for twenty years from January 1, 1928; and that in the event any of said directors die within said period or become in-

---

"The Seward interests agree that their preferred stock holdings may be retired at par at a rate not to exceed five per cent (5%) a year.

"The obligations of the respective corporations are to be assumed and paid by the merged or new corporation.

"Each of the directors named above agree not to engage, directly or indirectly, in the manufacture and-or-sale of trunks and bags for a period of five years, except as herein provided.

> "AMERICAN HARDWARE COMPANY, INC.,
> "By HARVEY SEWARD,
> HATCHER S. SEWARD,
> GEORGE S. BERNARD,
> FRED PILCHER.

> "TOTTY TRUNK & BAG COMPANY, INC.,
> "By W. A. TOTTY,
> W. A. TOTTY, JR.

> "INDEPENDENT TRUNK & BAG COMPANY, INC.,
> "By HENRY L. PLUMMER.

> "HOLDEN *Trunk* TRUNK & BAG COMPANY, INC.,
> "By S. WEST HOLDEN.

"J. W. SEWARD,
"By HARVEY SEWARD,
HATCHER S. SEWARD."

\*    \*    \*    \*    \*    \*    \*    \*    \*

"This agreement made this 28th day of March, 1928, by and between the American Hardware Company, Incorporated, a Virginia

capacitated or resign or are removed for cause the vacancy or vacancies so created shall be filled by electing some other person or persons that will represent the same stock as was represented by those whose positions are being filled."

In the voting trust agreement J. W. Seward, Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer, S. West Holden and such other persons as may desire to become parties thereto, who were or might become stockholders in the American Hardware Company, appear as parties of the first part. Charles E. Plummer, G. Cleveland Wright and Sam'l W. Zimmer, trustees, are parties of the second part.

Reference is first made to the fact that under the agreement of October 4, 1927, the American Hardware Company had acquired all the outstanding stock of said ac-

corporation having its principal office in the city of Petersburg, Virginia, which corporation is hereinafter referred to as 'American Company,' party of the first part; the stockholders of the Independent Trunk and Bag Company, Incorporated, a Virginia corporation having its principal office in the city of Petersburg, Virginia, which corporation is hereinafter referred to as 'Independent Company,' the stockholders of the Totty Trunk and Bag Company, Incorporated, a Virginia corporation having its principal office in the city of Petersburg, Virginia, which corporation is hereinafter referred to as 'Totty Company,' and the stockholders of the Holden Trunk and Bag Company, Incorporated, a Virginia corporation having its principal office in the city of Petersburg, Virginia, which corporation is hereinafter referred to as 'Holden Company,' parties of the second part; and Harvey Seward, Hatcher S. Seward, and Joseph W. Seward, parties of the third part.

"Whereas, it has been determined by the parties hereto, substantially in the manner set out in the memorandum of agreement dated the 4th day of October, 1927, and signed by the American Company, the Independent Company, the Totty Company, the Holden Company and others, that the net worth of said companies as of December 31, 1927, is as follows: ·

"American Company ............... ....$4,746,432.13
Independent Company .................. 107,900.95
Totty Company ....................... 337,424.96
Holden Company ..................... 92,753.10

Total ..................... $5,284,511.14

"And, whereas, the total issued and outstanding stock of said

quired companies and had issued in exchange therefor its own stock.

These important recitations then appear:

"Whereas, J. W. Seward, Harvey Seward, Hatcher S. Seward, George S. Bernard, and Fred Pilcher, on the 4th day of October, 1927, who owned a majority of the issued and outstanding capital stock of the American Hardware Company, Incorporated; W. A. Totty and W. A. Totty, Jr., a majority of the issued and outstanding capital stock of the Totty Trunk and Bag Company, Incorporated; Henry L. Plummer, a majority of the issued and outstanding capital stock of the Independent Trunk and Bag Company, Incorporated; and S. West Holden, a majority of the issued and outstanding capital stock of the Holden Trunk and Bag Company, Incorporated, agreed that the board of directors of the American Hardware Company, Incorporated, should consist of eight (8) members, four (4) of whom should be selected from those who were stockholders of the American Hardware Company, Incorporated, as of the date of the said agreement; two (2)

companies consists solely of common stock of the par value of one hundred dollars ($100.00) per share as follows:

| "American Company | 4,085 | shares |
| Independent Company | 2,000 | " |
| Totty Company | 1,250 | " |
| Holden Company | 900 | " |
| Total | 8,235 | shares |

so that the value per share of the issued and outstanding stock of each of said companies, determined as aforesaid, is as follows:

| "American Company | $1,161.9173 |
| Independent Company | 53.9504 |
| Totty Company | 269.9399 |
| Holden Company | 103.059 |

"And, whereas, the representatives of said companies have further determined that it will simplify the accomplishment of the purposes of said companies, as set forth in said agreement of October 4, 1927, to issue a portion of the treasury stock of the American Company in exchange for all of the issued and outstanding stock of the other companies on the basis shown above; and,

"Whereas, the board of directors of the American Company, at a meeting duly called and held on the 30th day of March, 1928, adopted

from the stockholders of the Totty Trunk and Bag Company, Incorporated; and one (1) each from the stockholders of the Independent Trunk and Bag Company, Incorporated, and of the Holden Trunk and Bag Company, Incorporated; such representations of the respective interests of the said board of directors to be continued for a period of twenty years from the 31st day of December, 1927; and

"Whereas, in pursuance of such agreement, the said Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer and S. West Holden have been duly elected members of the board of directors of the American Hardware Company, Incorporated, to serve for the year 1928, and until their successors are duly elected and qualified; and

"Whereas, it is the desire of those who become parties to this agreement to continue for a period of twenty years the aforesaid representation on the board of directors of the various interests merged into the American Hardware Company, Incorporated, as they believe it to be essential for the success of the company and for the best

a resolution authorizing the exchange of 463.09578 shares of its treasury stock in exchange for all of the issued and outstanding shares of the other companies on the basis aforesaid and directing its vice-president, Harvey Seward, to execute this agreement on behalf of and in the name of the company:

"Now, therefore, this agreement witnesseth: That the American Company, in consideration of the delivery to it of all of the issued and outstanding stock of each of said companies as set out above, agrees:

"First. To deliver 463.09578 shares of its treasury stock in exchange for the stock of the Independent Company, the Totty Company and the Holden Company, as follows:

| | |
|---|---|
| "To the Independent Company | 92.86457 shares |
| To the Totty Company | 290.40359 " |
| To the Holden Company | 79.82762 " |
| Total | 463.09578 shares |

which shares shall be apportioned among the several stockholders of said Independent Company, Totty Company and Holden Company, in proportion to the number of shares of said companies held by each; that is to say, the 92.86457 shares of the American Company delivered to the stockholders of the Independent Company in exchange for

interests of all of the stockholders thereof, that the said company shall be managed and directed during the said period, under a definite and fixed policy, in order to secure a union of the interests necessary to properly develop the general business and earning capacity of said company; and

"Whereas, it is believed that this purpose can be best accomplished by a continuance upon the said board of directors of those who have been elected for the year 1928, on account of their experience in the manufacturing of trunks and bags, and of the large individual holdings of each of them in the American Hardware Company, Incorporated, and the parties hereto have, therefore, determined to deposit with the trustees their respective hold-

all of the issued and outstanding stock of the Independent Company shall be apportioned among the stockholders of the Independent Company as follows:

| Name | No. Ind. Shares | Value Ind. Shares | No. Shares of Amer. Hdw. Co. in Exchange | Value of Am. Hdw. Co. Shares |
|---|---|---|---|---|
| H. L. Plummer | 1,117 | $ 60,262.67 | 51.86486 | $ 60,262.67 |
| E. T. Plummer | 150 | 8,092.58 | 6.96484 | 8,092.58 |
| Miss Alice Plummer | 70 | 3,776.53 | 3.25026 | 3,776.53 |
| Geo. W. Plummer | 31 | 1,672.45 | 1.43940 | 1,672.45 |
| Miss Helen V. Plummer | 10 | 539.50 | .46432 | 539.50 |
| Mrs. Mattie M. Plummer | 40 | 2,158.10 | 1.85729 | 2,158.10 |
| W. L. Venable | 25 | 1,348.75 | 1.16081 | 1,348.75 |
| Mrs. Mary L. Venable | 5 | 269.74 | .23216 | 269.74 |
| Miss Bessie F. Venable | 5 | 269.74 | .23216 | 269.74 |
| W. G. Morton | 30 | 1,618.51 | 1.39297 | 1,618.51 |
| F. F. Jones | 22 | 1,186.91 | 1.02151 | 1,186.91 |
| E. A. Hartley | 50 | 2,697.52 | 2.32161 | 2,697.52 |
| L. O. Dishman | 13 | 701.36 | .60362 | 701.36 |
| Mrs. Leiper V. Rennie | 20 | 1,079.01 | .92865 | 1,079.01 |
| F. F. Whittle | 100 | 5,395.05 | 4.64323 | 5,395.05 |
| E. E. Titus | 150 | 8,092.57 | 6.96486 | 8,092.57 |
| J. M. Titus | 20 | 1,079.01 | .92865 | 1,079.01 |
| Howard E. Wright | 12 | 647.41 | .55719 | 647.41 |
| Miss E. H. Tannehill | 70 | 3,776.54 | 3.25026 | 3,776.54 |
| Michael Ryan | 10 | 539.50 | .46432 | 539.50 |
| H. A. McAfee | 50 | 2,697.52 | 2.32160 | 2,697.52 |
| | 2,000 | $107,900.95 | 92.86457 | $107,900.95 |

"The 290.40359 shares of the American Hardware Company delivered to the stockholders of the Totty Company in exchange for all of

ings of common stock in said company, in order that the trustees may hold and vote the same, for the purpose and in accordance with the provisions of this agreement."

In section 6 of this agreement it is said: "But the powers herein given to the trustees are made expressly subject to the provisions of section 12 herein, with respect to the election of directors."

Section 12, here referred to, reads: "The trustees, in voting the stock deposited with them under this agreement, shall preserve, during the life of this agreement, the representation upon the board of directors of the respective interests merged into the American Hardware Company, Incorporated, in accordance with the present representation, that is to say, four directors shall be elected from the stockholders of the American Hardware Com-

the issued and outstanding stock of the Totty Trunk Company shall be apportioned among the several stockholders of the Totty Company as follows:

| Name | No. Totty Shares | Value Totty Shares | No. Shares of Amer. Hdw. Co. in Exchange | Value of Amer. Hdw. Co. Shares |
|---|---|---|---|---|
| W. A. Totty | 905 | $244,295.67 | 210.25219 | $244,295.67 |
| R. R. Totty | 75 | 20,245.50 | 17.42422 | 20,245.50 |
| R. A. Totty | 42 | 11,337.48 | 9.75757 | 11,337.48 |
| E. B. Totty | 38 | 10,257.71 | 8.82827 | 10,257.71 |
| W. A. Totty, Jr. | 190 | 51,288.60 | 44.14134 | 51,288.60 |
| | 1,250 | $337,424.96 | 290.40359 | $337,424.96 |

"The 79.82762 shares of the American Hardware Company delivered to the stockholders of the Holden Company in exchange for all of the issued and outstanding stock of the Holden Company shall be apportioned among the several stockholders of the Holden Company as follows:

| Name | No. Holden Shares | Value Holden Shares | No. Shares of Am. Hdw. Co. in Exchange | Value of Amer. Hdw. Co. Shares |
|---|---|---|---|---|
| J. D. Mason | 30 | $ 3,091.77 | 2.66092 | $ 3,091.77 |
| H. F. Cooper | 15 | 1,545.88 | 1.33046 | 1,545.88 |
| S. W. Holden | 855 | 88,115.45 | 75.83624 | 88,115.45 |
| | 900 | $92,753.10 | 79.82762 | $92,753.10 |

"Second. Each of the stockholders of the Independent Company, the Totty Company and the Holden Company, in consideration of the

pany, Incorporated, who were holders of stock prior to said merger and who continue as such, or from the heirs or assigns of any such stockholder, two shall be elected from those who were stockholders of the Totty Trunk and Bag Company, Incorporated, and who on account of said merger have become, and continue as, stockholders of the American Hardware Company, Incorporated or from the heirs or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Independent Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Holden Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder. In case of vacancies in

---

delivery to them, respectively, of the shares of the American Company as set out above, agrees to deliver to the American Company all of the shares held by them, respectively, in each of said companies.

"Third. To facilitate the exchange of stock of the American Company for all of the issued and outstanding stock of the other companies on the basis aforesaid, it is agreed that the Natonal Bank of Petersburg and the Petersburg Savings and American Trust Company shall act as depositories for receiving and exchanging said stock as well as for receiving and exchanging the present issue of common stock of the American Company for the preferred and common stock of the American Company to be issued pursuant to the provisions of this contract hereinafter set out. Said depositories may act jointly or severally in the exercise of the powers conferred upon them in this agreement or in the performance of any of the acts required of them or that may be taken by them pursuant to the provisions of this contract. Each party hereto of the second part holding shares of the capital stock of the Independent Company, the Totty Company and/or the Holden Company to the number of shares set opposite his, her or its name as hereunto subscribed, respectively, hereby severally agrees to deposit the same and the certificates therefor, with sufficient transfers thereof, with said depositories and to receive in exchange therefor receipts signed by the depository with which said shares are deposited reciting that said receipts are issued pursuant to this agreement and that said shares of stock have been received for the purpose of exchanging them for shares of the American Company on the basis therein set out. The American Company,

the board of directors, due to resignation, death, incapacity, or other cause, the trustees shall make recommendations to the remaining directors as to the persons to be elected to fill such vacancies, to the end that the purposes of this agreement may be always accomplished due to the representation of the respective interests preserved' at all times upon the board of directors. They shall elect as directors of the company, during the life of this agreement, at each annual meeting of the stockholders, those who are the present directors, unless they are prevented from so doing by something beyond their control. *Should the preferred stock become entitled to equal voting power with the common stock, the trustees shall vote the stock deposited hereunder in favor of such persons as may be nominated by a majority of the preferred stockholders for directors.*"

As this agreement was originally drafted it did not contain the italicized sentence. A copy of the original draft

---

on its part, agrees to deliver to said depositories the shares of stock herein agreed to be delivered in exchange for stock of the other companies when all of the stock of the other companies has been delivered to said depositories, and shall receive from the depository to which said stock is delivered a similar receipt to that issued to the stockholders of the other companies.

"Fourth. The American Company further agrees that when all of the stock of the other companies has been delivered to said depositories and it has delivered 463.09578 shares of its treasury stock to said depositories in exchange for the stock of the other companies it will cause its charter to be so amended that it will have the right to issue forty-five thousand shares of 7% cumulative preferred stock of the par value of one hundred dollars ($100) per share, and forty-five thousand shares of common stock at the par value of ten dollars ($10) per share and that when its charter has been so amended it will cause to be issued forty-five thousand shares of its preferred stock as a stock dividend, and forty-five thousand shares of its new common stock in place of its present common stock issue that will be outstanding after the exchange of a portion of its treasury stock for all the issued and outstanding stock of the Independent Company, the Totty Company and the Holden Company herein agreed upon has been completed. The preferred stock to be issued as aforesaid shall be preferred over the common stock both in the distribution of capital assets and in the distribution of earnings, but shall be subject to retirement on and after January 1, 1930, at one hundred dollars ($100) per share plus accrued dividends and interest on dividends in arrears to date of retirement and to such extent as the board of directors may from time to time determine, but not to exceed seven and one-

was furnished to the petitioner, afterward this sentence was add'ed, but his attention was not called to it at the time of its execution and he did not have actual knowledge of it until some years later. No fraud is charged.

It is true that these contracts are not executed by the same parties. That of October 4, 1927, was executed by said several corporations and not by their individual stockholders. The contract, dated March 28, 1928, is executed by the American Hardware Company, the stockholders of the three companies absorbed, and by Harvey Seward, Hatcher S. Seward and Joseph W. Seward, while the voting trust agreement itself is signed by J. W. Seward, Harvey E. Seward, Hatcher S. Seward, George S. Bernard', Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer and S. West Holden, and by the trustees, Charles E. Plummer, G. Cleveland Wright and Sam'l W. Zimmer.

half per cent. (7½%) annually of the preferred stock standing in the name of each stockholder on the books of the company on and after the first day of January, 1930. When the preferred stock becomes subject to retirement as aforesaid the board of directors may from time to time, with the consent of any one or more stockholders, retire as much of the preferred stock standing in the name of those consenting as the board may determine and as may be agreed upon by the board and the stockholders whose stock is being retired. The common stock shall have the exclusive voting power (except as hereinafter provided with respect to the creation of liens) unless during any one fiscal year the corporation shall fail to earn dividends on its preferred stock, in which event the preferred stock shall have the same voting power as the common stock until the earnings of the company are sufficient to pay dividends and past due dividends with interest thereon are actually paid. No dividends shall be declared or paid on the common stock until the surplus and/or profits of the company shall amount to five hundred thousand dollars ($500,000), and thereafter no dividends shall be declared or paid on the common stock that will reduce its surplus and/or profits below five hundred thousand dollars ($500,000). This limitation of dividends on the common stock shall be made effective by embodying a provision to that effect in the charter of the company and in the stock certificates for both preferred and common stock. No liens, except liens to secure in whole or in part the purchase price of after acquired property, shall be created so as to bind any of the assets or income of the corporation unless such lien be authorized by a vote of three-fourths of all of the outstanding preferred stock, given at a special meeting called by the board of directors.

"Fifth. The American further agrees to deliver to said deposi-

The stockholders who signed this petition, with the exception of J. W. Seward, were at that time directors of the defendant company and are the same gentlemen whose continuance in office, as set out in the trust agreement, was deemed "essential for the success of the company and for the best interest of the stockholders thereof."

■ Courts should not undertake to construe away the plain letter of a contract. The intention of the parties, as they write it, must prevail, but unfortunately this intention is not always plain. When this is true we look to the situation of the parties, the subject matter of the agreement, and its purpose.

■ "Regard should be had to the intention of the parties and such intention should be given effect. To arrive at this intention regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties intended to accomplish. A con-

---

tories all shares both of preferred and common which the shareholders of the Independent Company, the Totty Company and the Holden Company are entitled to receive in exchange or retirement of said shares of treasury stock. of the present issue of the American Company; it further agrees to deliver to said *depositores* ten per cent. of the remainder of both preferred and common stock to be issued under the provisions of this contract. Said depositories shall thereupon distribute to the shareholders of the Independent Company, the Totty Company, and the Holden Company the shares to which they are entitled in accordance with their respective rights thereunder— retaining, however, ten per cent. of the remaining shares of the American Company to be delivered to said *depositores* under the provisions of this paragraph. The shares retained by said depositories (aggregating ten per cent. of the total issue of both preferred and common stock of the American Company) shall be held by said depositories for a period of eighteen months from the first day of January, 1928, and at the end of said period said depositories shall distribute the shares so retained among the parties entitled thereto, after first making such deductions therefrom as an accounting may warrant, it being agreed that said shares are to be retained by said depositories for the following purposes:

"(a) As a guarantee that the value given the accounts receivable and notes receivable of each of said companies in determining the net worth of each will be realized.

"(b) As a guarantee that proper adjustments of inventory values will be made by each company in so far as adjustments may be made necessary in inventory values because of the inclusion in inventory of anything that the board of directors of the American Company may determine to be worthless within said period of eighteen months, and

struction should be avoided if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties." *McGuire* v. *Brown*, 114 Va. 235, 76 S. E. 295, 297; *Moore* v. *C. & O. Ry. Co.*, 159 Va. 703, 167 S. E. 351.

■ All of the provisions of a contract should be construed together and those which appear to conflict should be harmonized whenever it is reasonably possible. *Phoenix Insurance Co.* v. *Shulman Co.*, 125 Va. 281, 99 S. E. 602. If we look to the language of the trust agreement only we see that it was deemed essential to the success of the corporate business that the balance of power be preserved and that the representations of the several interests of its constituent elements be retained for twenty years.

At the risk of repetition and to make this clear, we quote again from section 12:

"The trustees, in voting the stock deposited with them

---

also to guarantee the correction of any clerical errors in computing inventory.

"(c) As a guarantee that proper adjustments will be made to take care of realizations on assets not reflected in the statements determining the net worth of said companies and to take over liabilities that may have to be set up that are not reflected in said statements.

"Sixth. The issuing of fractional shares of the new issue of preferred and common stock shall be avoided by issuing allotment certificates for fractional shares, entitling the holder to a stock certificate when he presents fractional allotment certificates for one or more shares.

"Seventh. The American Company further agrees to assume and does hereby assume the payment of all of the liabilities of the Independent Company, the Totty Company, and the Holden Company, subject to such adjustments within the period of eighteen months from January 1, 1928, as have to be made under the provisions of paragraph fifth of this contract.

"Eighth. The parties of the third part, holding together a majority of shares of the American Company, in consideration of the promises herein made by the American Company and the stockholders of the Independent Company, the Totty Company and the Holden Company, jointly and severally agree that Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., H. L. Plummer and S. West Holden shall be elected directors of the American Company after this contract has been duly executed by all of the parties, if not then directors of said company, and

under this agreement, shall preserve, during the life of this agreement, the representation upon the board of directors of the respective interests merged into the American Hardware Company, Incorporated, in accordance with the present representation, that is to say, four directors shall be elected from the stockholders of the American Hardware Company, Incorporated, who were holders of stock prior to said merger and who continue as such, or from the heirs or assigns of any such stockholder, two shall be elected from those who were stockholders of the Totty Trunk and Bag Company, Incorporated, and who on account of said merger have become, and continue as, stockholders of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Independent Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from the heirs

said parties further agree that by means of a voting trust to be executed by them and by George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., H. L. Plummer and S. West Holden and by such other stockholders of the American Company as may care to become parties thereto, the persons herein agreed upon as directors shall be continued as such for twenty years from January 1, 1928; and that in the event any of said directors die within said period or become incapacitated or resign or are removed for cause the vacancy or vacancies so created shall be filled by electing some other person or persons that will represent the same stock as was represented by those whose positions are being filled.

"Ninth. Each of the parties to be elected directors as aforesaid agrees not to engage directly or indirectly in the manufacture or sale of trunks and bags for the period of five years from January 1, 1928, except as herein provided.

"Tenth. The covenants and agreements to be kept, observed and performed by each of the parties of the second and third parts shall be binding upon his respective heirs, executors, administrators, legatees, distributees, and assigns. This agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

"In testimony whereof the American Hardware Company has caused its corporate name to be hereto signed by Harvey Seward, its vice-president, and its corporate seal to be hereto fixed and attested by H. S. Seward, its secretary, and the individual parties hereto have

or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Holden Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from 'the heirs or assigns of any such stockholder."

■ This purpose iterated and reiterated is everywhere made perfectly plain. Has it been wiped away by the addendum to this section? That reads:

"Should the preferred stock become entitled to equal voting power with the common stock, the trustees shall vote the stock deposited hereunder in favor of such persons as may be nominated by a majority of the preferred stockholders for directors."

Who may be nominated by the preferred stockholders? No limitation is in terms put upon their choice, but this apparently unfettered discretion should be exercised in the light of the preservation of the balance of power. Those selected should truly represent these several in-

hereunto set their hands and seals, all as of the day and year first above written.

"AMERICAN HARDWARE COMPANY, INC.,
"By HARVEY SEWARD,
"Vice-President.

"(Seal)
"Attest:
    "H. S. SEWARD,
    "Secretary."

(Signed also by thirty-two individual stockholders.)

\*     \*     \*     \*     \*     \*     \*     \*     \*

"This agreement, made this 20th day of March, in the year 1928, by and between J. W. Seward, Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer and S. West Holden, all of the city of Petersburg, Virginia, and such other persons, as may desire to become parties to this agreement, who are now or who may hereafter be stockholders in the American Hardware Company, Incorporated, a corporation chartered and existing under the laws of the State of Virginia, parties of the first part, and Charles E. Plummer, G. Cleveland Wright and Sam'l W. Zimmer, trustees, of the city of Petersburg, Virginia, hereinafter, for convenience, called 'trustees,' parties of the second part:

"Whereas, in pursuance of a certain agreement dated the 4th day of October, 1927, the American Hardware Company, Incorporated, has acquired all of the issued and outstanding capital stock of the

terests whose appraised values as of December 31, 1927, were:

| | |
|---|---:|
| American Company | $4,746,432.13 |
| Independent Company | 107,900.95 |
| Totty Company | 337,424.96 |
| Holden Company | 92,753.10 |
| | $5,284,511.14 |

Petitioner, however, cannot complain. He is in part responsible for what was done, aided by Mr. Bernard, an original Seward director. He has waived his rights.

This is an extract from the minutes of the stockholders' meeting of February 14, 1933:

"Upon motion of Mr. Geo. S. Bernard seconded by Mr. H. S. Seward, the following resolution was unanimously adopted:

"Resolved, That Article III of section 1 of the by-laws be amended so as to read as follows:

Totty Trunk and Bag Company, Incorporated, of the Independent Trunk and Bag Company, Incorporated, and of the Holden Trunk and Bag Company, Incorporated, by issuing in exchange for the outstanding capital stock of the said three corporations, stock of the American Hardware Company, Incorporated, upon a basis agreed upon between the said companies, and between respective stockholders of each company so acquired; and

"Whereas, J. W. Seward, Harvey Seward, Hatcher S. Seward, George S. Bernard, and Fred Pilcher, on the 4th day of October, 1927, who owned a majority of the issued and outstanding capital stock of the American Hardware Company, Incorporated; W. A. Totty and W. A. Totty, Jr., a majority of the issued and outstanding capital stock of the Totty Trunk and Bag Company, Incorporated; Henry L. Plummer, a majority of the issued and outstanding capital stock of the Independent Trunk and Bag Company, Incorporated; and S. West Holden, a majority of the issued and outstanding capital stock of the Holden Trunk and Bag Company, Incorporated, agreed that the board of directors of the American Hardware Company, Incorporated, should consist of eight (8) members, four (4) of whom should be selected from those who were stockholders of the American Hardware Company, Incorporated, as of the date of the said agreement; two (2) from the stockholders of the Totty Trunk and Bag Company, Incorporated; and one (1) each from the stockholders of the Independent Trunk and Bag Company, Incorporated, and of the Holden Trunk and Bag Company, Incorporated; such representation of the respective interests of the said board of directors to be con-

"Article III—Directors:

"Sec. 1—Number and Authority.—The board of directors shall consist of not less than seven or more than nine persons to be selected from among the stockholders of the company at the regular annual meeting of the stockholders, and the persons so selected shall constitute the board of directors for the ensuing year and until their successors are elected. Should any vacancy occur on the board of directors during the year the vacancy shall be filled by the remaining directors. Said board shall have charge of the property, interest, business and transactions of the company, with full power and authority to manage and conduct the same; but the board may, whenever it sees fit, by a majority vote designate and executive committee of three from its members, which shall include the president, which committee shall, except as to matters

tinued for a period of twenty years from the 31st day of December, 1927; and

"Whereas, in pursuance of such agreement, the said Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer and S. West Holden have been duly elected members of the board of directors of the American Hardware Company, Incorporated, to serve for the year 1928, and until their successors are duly elected and qualified; and

"Whereas, it is the desire of those who become parties to this agreement to continue for a period of twenty years the aforesaid representation on the board of directors of the various interests merged into the American Hardware Company, Incorporated, as they believe it to be essential for the success of the company and for the best interests of all of the stockholders thereof, that the said company shall be managed and directed during the said period, under a definite and fixed policy, in order to secure a union of the interests necessary to properly develop the general business and earning capacity of said company; and

"Whereas, it is believed that this purpose can be best accomplished by a continuance upon the said board of directors of those who have been elected for the year 1928, on account of their experience in the manufacturing of trunks and bags and of the large individual holdings of each of them in the American Hardware Company, Incorporated, and the parties hereto have, therefore, determined to deposit with the trustees their respective holdings of common stock in said company, in order that the trustees may hold and vote the same, for the purpose and in accordance with the provisions of this agreement; and

"Whereas, the parties herein named are the owners of the number of shares of the common capital stock of the American Hardware

upon which the board of directors has acted, have and exercise the full power of the board of directors in the management of the business and affairs of the corporation, and shall also have the power to authorize the seal of the corporation to be affixed to all papers which may require it."

Thereafter these nine gentlemen were nominated and elected, Harvey Seward, W. R. Seward, A. L. Seward, Fred Pilcher, George S. Bernard, B. J. Seward, W. A. Totty, Charles E. Plummer and Bernard C. Syme.

In the nature of things a directorate of nine is an unbalanced body under these contracts.

Mr. Plummer and Mr. Syme, elected directors at this meeting, are also trustees. The trustees originally named as we have seen were Mr. Plummer, Mr. Wright and Mr. Zimmer. Mr. Wright has resigned and Mr. Zimmer is dead. These two gentlemen have been succeeded by Mr. Benjamin T. Kinsey and Bernard C. Syme.

---

Company, Incorporated, of the par value of ten dollars ($10) per share as follows:

"J. W. Seward ......................... 11,994 shares
Harvey Seward ........................ 4,621 "
Hatcher S. Seward .................... 9,207 "
George S. Bernard .................... 543 "
Fred Pilcher ......................... 1,024 "
W. A. Totty .......................... 1,872 "
W. A. Totty, Jr. ..................... 393 "
Henry L. Plummer ..................... 465 "
S. West Holden ....................... 575 "

"Now, therefore, this contract witnesseth: That the said J. W. Seward, Harvey Seward, Hatcher S. Seward, George S. Bernard, Fred Pilcher, W. A. Totty, W. A. Totty, Jr., Henry L. Plummer, and S. West Holden, and such other stockholders of the American Hardware Company, Incorporated, as may desire to become parties hereto, and comply with and be bound by, the provisions of this agreement, for and in consideration of the premises and in consideration of the sum of one dollar ($1.00), paid to each of the parties hereto by the said trustees, and in further consideration of the mutual covenants, promises and agreements to be kept, observed and performed by each of the parties hereto, do each covenant and agree, as follows:

"Each party hereto sells, assigns, and transfers unto the said trustees the number of shares of capital stock of the American Hardware Company, Incorporated, owned by him, as above set forth, save and except one (1) share each, and covenants and agrees upon the

There had been default in the payment of dividends. The trustees were obligated to vote stock held by them, when directors were to be elected, for men nominated by the preferred stockholders.

The by-laws of the corporation provide that "each stockholder shall be entitled to one vote for every share of stock held in his name." In the charter is this provision:

"The common stock shall have the exclusive voting power except as hereinafter provided with respect to the creation of liens unless during any one fiscal year the corporation shall fail to earn dividends on its preferred stock, in which event the preferred stock shall have the same voting power as the common stock until the earnings of the company are sufficient to pay dividends and past due dividends with interest are actually paid * * *."

Code, section 3799, as amended by Acts 1926, ch. 578, p. 998, reads: "Unless it shall have been otherwise pro-

---

request of the trustees to deliver the said stock to the trustees and to properly endorse, transfer and assign the certificates representing the said stock, in order that the said stock may be transferred on the books of the company to the names of the said trustees.

"The said trustees hereby accept the assignment and transfer of the said stock, and covenant and agree to hold the same upon the following conditions, uses and trusts:

"1. Upon the actual delivery by each party hereto of the aforesaid stock to the said trustees, the trustees will cause the same to be transferred on the books of the corporation, to themselves, as trustees, and covenant and agree, to execute and deliver to such party, a trustee's certificate or certificates, in an amount equal to the amount (par value) of the stock so delivered or deposited, which trustee's certificates shall be of substantially the following form:

"Trustee's Certificate.

"American Hardware Company, Incorporated.
"Petersburg, Virginia.

"Number.............           Shares..............

"This certifies that there has been deposited with the trustees whose names are signed to this certificate, ............ shares of the common capital stock of the American Hardware Company, Incorporated, of the par value of $10.00 each, under and by virtue of an agreement entered into between certain stockholders of the said cor-

vided in the charter, certificate of incorporation, or in the articles of association or in an amendment or by-laws, each person in whose name stock shall stand upon the books of any corporation at any date fixed by the by-laws as prescribed by section thirty-seven hundred and ninety-seven, shall be entitled to one vote in person or by proxy for each share of stock appearing in his or her name on said books."

Let us for a moment forget the trust agreement and all that led to its execution. These directors were elected by a clear majority in interest both of the common and of the preferred stockholders.

It is their nomination rather than their election which is challenged. That, as we have seen, is provided for in the addendum to said section 12 of the trust agreement. The trustees are directed to vote stock deposited with them in favor of such persons as may be nominated "by a majority of the preferred stockholders."

■ The voting power which rested in the preferred stockholders is fixed by the charter, by-laws and statute

poration, and the undersigned trustees, dated the 20th day of March, 1928, and that upon the termination of the said agreement, on the 31st day of December, 1947, will be entitled to receive a certificate for ............ shares, of the par value of $10.00 each, of the common capital stock of the American Hardware Company, Incorporated, fully paid and non-assessable, and in the meantime to receive payments, equal to the dividends, if any, collected by the undersigned trustees, or their successors, upon a like number of shares standing upon the books of the said company, in the name of the said trustees, or their successors.

"Until the actual delivery of such stock certificates, the trustees, or their successors, shall possess, and shall be entitled to exercise all rights of every name and nature, including the right to vote with respect to any and all such stock, it being expressly stipulated that no voting right passes by or under this certificate, or by or under any agreement, expressed or implied.

"This certificate and the interest represented thereby is transferable only on the books of the undersigned trustees, upon presentation and surrender thereof, and the holder hereof accepts the same, subject to all the terms and conditions of the aforesaid agreement between the trustees and certain stockholders of the said corporation, and becomes a party to the said agreement, and is entitled to the benefits thereof.

"This certificate shall be surrendered to the trustees by the holder hereof, at the termination of the trust agreement, upon the delivery

heretofore noted, and that power could neither be altered nor abridged by any trust agreement assented to or executed by common stockholders. They may, however, tell their trustees for whom to vote and did tell them to vote for those nominated "by a majority of the preferred stockholders." The preferred stockholders were not obliged to nominate anybody, but in harmony with this provision they did actually make nominations. Since they have done this it is proper that we should enquire into the manner in which it was done. Those gentlemen nominated were nominated by a majority in interest of the preferred stockholders. That, the trustees thought, complied with the provisions of their trust agreement and this conclusion met with the approval of the trial court.

In 14 C. J., p. 897, the rule is thus stated: "Majority in interest. Charter or statutory provisions or provisions in by-laws requiring the presence for the purposes of a quorum, or the vote or assent, of a majority of the stock-

---

to such holder of a like amount of stock in the American Hardware Company, Incorporated.

"In witness whereof, the undersigned trustees, have executed this certificate, this .......... day of ......... .........., 19.. .

.................................
Trustee

.................................
Trustee

.................................
Trustee

"2. The trustee's certificates shall be transferable only on the books of the trustees, by the holder thereof in person, or by attorney, upon surrender thereof properly assigned and endorsed. Upon such assignment and surrender, a new trustee's certificate shall be issued to the transferee by the trustees, and the person accepting such assignment, or accepting such new certificate, shall be bound by the terms of this agreement, as fully to all intents and purposes, as if he signed the same.

"3. The trust hereby created shall be valid and binding for a period of twenty years from and after the 31st day of December, 1927, at which time, the trustees, or their successors, will deliver, upon surrender of the outstanding trustees certificates, corresponding certificates or shares of the common capital stock in the said American Hardware Company, Incorporated.

"4. Should any dividends be paid to the said trustees, or their successors, on the shares of stock standing in their names as such,

holders, or of two-thirds of them, etc., are generally construed as meaning a majority or two-thirds of the stockholders in interest and not in numbers, unless a contrary intention appears from the language or is to be inferred from the nature and purposes of the corporation."

■ "A by-law or a charter or statutory provision requiring the affirmative vote of a majority of the stockholders, or of a majority of those present at the meeting, means a majority in interest rather than a majority in number only. The computation should be based on the amount of stock outstanding at the time of the meeting rather than on the amount of capital authorized." 3 Fletcher on Corp., section 1647, p. 2764.

In *Bank of Los Banos* v. *Jordan,* 167 Cal. 327, 139 Pac. 691, the court, in a short *per curiam* opinion, said: "The opinion of the court is that the clause of section 290 of the Civil Code which is in these words, 'provided, also, that at any time during the existence of corporations for profit,

they will, within a reasonable time after the receipt of such dividends, distribute the money so received to the holders of the trustee's certificates issued hereunder, in proportion to the number of shares named in the certificate or certificates of each holder. In making payment of dividends the trustees, or their successors, shall be entitled to treat the persons in whose names such trustee's certificates stand upon the books of the trustees, as the owners thereof for all purposes.

"5. In the event of the death, resignation, removal of incapacity, of any trustee, his successor shall be named by an instrument in writing signed by the remaining trustees, or by a majority of them, and such successor trustee, or trustees, shall be clothed with all the rights, privileges, duties and powers herein conferred upon the trustees herein named.

"6. The said trustees, or their successors in trust, shall have and be clothed with the sole and exclusive voting power of the stock standing in their names as such, and shall always vote the same as a majority of the trustees shall determine and direct. They shall have power to vote the stock at every annual and special meeting of the stockholders, during the life of the trust agreement, and shall have full and complete authority to vote upon any and all questions arising at any such meetings. All action to be taken by, and all questions arising between the trustees, from time to time, shall be determined by the decision of a majority of those then acting as trustees, but the powers herein given to the trustees are made expressly subject to the provisions of section 12 herein with respect to the election of directors.

"7. Any trustee may vote in person or by proxy, and a proxy in writing signed by a majority of the trustees shall be sufficient authority to the person named therein to vote the stock held by all the

other than those of the character last hereinabove provided for, the number of the directors may, by a majority of the stockholders of the corporation, be increased, or diminished to any number not less than three, who must be members of the corporation,' means a majority of interest of the stockholders, and not a majority in number only. And sections 362 and 312 do not change that construction of 290 and do not require any more than a majority in interest." See, also, *State* v. *Horan,* 22 Wash. 197, 60 Pac. 135; *In re Mathiason Mfg. Co.,* 122 Mo. App. 437, 99 S. W. 502; *People* v. *Albany & S. R. Co.,* 55 Barb. (N. Y.) 344; *Toledo Traction, Light & Power Co.* v. *Smith* (D. C.), 205 Fed. 643; *Weinburgh* v. *Union, etc., Co.,* 55 N. J. Eq. 640, 37 Atl. 1026; Cook on Corp. (6th Ed.), section 609.

This construction, adopted, as we have seen, by the trial court, seems reasonable, although there is authority to the contrary. *Smith* v. *Iron Mountain Tunnel Co.,* 46 Mont. 13, 125 Pac. 649, Ann. Cas. 1914 B, 551.

To hold that a majority of individual stockholders

---

trustees hereunder at any meeting, general or special, of the stockholders of the American Hardware Company, Incorporated. Any proxy executed by the direction of a majority of the trustees, as herein provided, may be executed by such majority in the names of all the trustees.

"8. Upon the succession to office of a successor to any trustee, a majority of the trustees in office at the time of such succession are hereby irrevocably invested with full power, should they deem it necessary or advisable to exercise it, to assign the shares of stock covered by this agreement to the trustees then in office, including such successor, to the end that a new certificate for such stock may be issued in the names of the trustees at that time duly appointed hereunder.

"9. From time to time the trustees may receive any additional stock certificates of the American Hardware Company, Incorporated, and in respect of all such stock certificates so received, will issue and deliver voting trust certificates in the form corresponding to those above specified, entitling the holders to the rights therein and herein provided.

"10. In case the trustees shall receive any stock certificates of the said American Hardware Company, Incorporated, issued by way of dividends upon stock certificates held by them under this agreement, the said trustees shall hold such stock certificates likewise subject to the terms of this agreement, and shall issue trustee's certificates representing such stock certificates to the respective holders of the then outstanding trustee's certificates, entitled to such dividend.

"11. The trustees may permit a sufficient number of shares of the

was necessary to reach any conclusion where the shares of stock run into thousands might produce inextricable confusion and this under the statute is not done unless called for in the charter or by-laws.

They were nominated by a majority in interest even if it were possible to distinguish between "the same voting power" given in the charter and "equal voting power" mentioned in the addendum, although no such purpose is made plain. Nominations to be made by the preferred stockholders were to be made in accordance with the power to vote which had theretofore rested with them.

Having reached the conclusion that a majority in interest alone was necessary we are to determine if such a majority in fact appears.

At the date of the stockholders' meeting—February 14, 1933—there were preferred outstanding shares 29,119. There were actually present, in person or by proxy, 28,483 shares. To make any valid nominations approval of 14,560 shares was necessary. Votes so cast amounted to 17,351 shares. It is said that 3,445 shares which belonged

said stock to be withdrawn and released from this agreement, from time to time to permit the qualification of one or more individuals to act as directors in the said American Hardware Company, Incorporated, such withdrawal and release to be made upon the surrender to the trustees of the trustee's certificates in respect of such amount of stock. Each such release of stock, however, shall be only to an amount sufficient to meet the requirements of the by-laws of the said corporation, and the laws of the State of Virginia, relating to the qualifications of the directors, and shall be made only to such persons as may be selected by the trustees to become directors of the said corporation, and in such manner and upon such terms, as may be deemed expedient by the trustees. The trustees shall make the necessary arrangements, to provide for the redeposit hereunder, of any such released stock, in exchange for trustee's certificates, when the holder shall have ceased to be a director of the said American Hardware Company, Incorporated.

"12. The trustees, in voting the stock deposited with them under this agreement, shall preserve, during the life of this agreement, the representation upon the board of directors of the respective interests merged into the American Hardware Company, Incorporated, in accordance with the present representation, that is to say, four directors shall be elected from the stockholders of the American Hardware Company, Incorporated, who were holders of stock prior to said merger and who continue as such, or from the heirs or assigns of any such stockholder, two shall be elected from those who were stock-

to petitioner were illegally voted by Mr. Charles E. Plummer, and that 470 shares which belonged to him were illegally voted by Mr. Syme. If this be true, then these directors were not nominated by a majority interest of preferred stockholders. Is it true?

Code, section 3801, declares that as between pledgor and pledgee of stock, pledged to secure a specific loan for a fixed time, the pledgor shall be entitled to the right to vote it unless there is a written agreement to the contrary between pledgor and pledgee.

The Virginia National Bank and the First National Bank of Petersburg were consolidated under the name of First National Bank and Trust Company. Mr. Plummer is its president. Mr. Syme is president of Petersburg Savings and American Trust Company. Prior to this consolidation Mr. Seward transferred to the Virginia National Bank and to the First National Bank of Petersburg as collateral security for loans the preferred stock which he claims was improperly voted by Mr. Plummer under a proxy which he held from his bank. He also for a like reason had transferred to the Petersburg Savings and

---

holders of the Totty Trunk and Bag Company, Incorporated, and who on account of said merger have become, and continue as, stockholders of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Independent Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder, and one shall be elected from those who were stockholders of the Holden Trunk and Bag Company, Incorporated, and who on account of said merger has become, and continue as, a stockholder of the American Hardware Company, Incorporated, or from the heirs or assigns of any such stockholder. In case of vacancies in the board of directors, due to resignation, death, incapacity, or other cause, the trustees shall make recommendations to the remaining directors as to the persons to be elected to fill such vacancies, to the end that the purposes of this agreement may be always accomplished due to the representation of the respective interests preserved at all times upon the board of directors. They shall elect as directors of the company, during the life of this agreement, at each annual meeting of the stockholders, those who are the present directors, unless they are prevented from so doing by something beyond their control. Should the preferred stock become entitled to equal voting power with the common

American Trust Company the 470 shares which Mr. Syme voted under power of proxy.

When this stock was first hypothecated Seward retained its voting privilege. Afterwards the banks asked that it be assigned also and it was assigned. This, it is now claimed, was done under duress.

A contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the fact is not a contract executed under duress. *Cary* v. *Harris,* 120 Va. 252, 91 S. E. 166.

In *Ford* v. *Engleman,* 118 Va. 89, 86 S. E. 852, it was held that notes executed under a threat to send the maker to the penitentiary for an alleged offense if he refused to sign, were not executed under duress. If we were to concede this to be an extreme case, it is certainly authority for the proposition that duress is not readily accepted as an excuse.

The bank had a right to call the loan and sell the collateral. Petitioner says that in such an event it would

---

stock, the trustees shall vote the stock deposited hereunder in favor of such persons as may be nominated by a majority of the preferred stockholders for directors.

"13. Wherever in this agreement, the trustees are referred to, such term shall be held to embrace the trustees for the time being, in office as such, whether original or successor. And the trustees shall, at such time as they may deem proper, file a true copy of this agreement with the American Hardware Company, Incorporated.

"14. The failure of any party hereinbefore named, to sign and execute this agreement shall in no manner render the same void or voidable, as to those who sign and execute, provided, however, that this agreement shall not become effective until at least eight of those who are herein named as parties of the first part have affixed their names and seals hereto.

"15. The trustees, hereby accept the trust created, and covenant and agree to faithfully and diligently perform the covenants and agreements herein contained, on their part to be kept and performed, and to hold the said stock, during the life of this agreement in their names as trustees, except as is otherwise herein provided, and to deliver and transfer the same, to those holding trustee's certificates, upon the termination of this trust agreement.

"16. The covenants and agreements to be kept, observed and performed by each party of the first part hereto, shall be binding upon his respective heirs, executors, administrators, legatees, distributees and assigns.

"This agreement may be executed in any number of counterparts,

have been sold for a song and bought in by the bank. Such a course might have worked a hardship upon the debtor and was not adopted by the bank. It took this less drastic step. It asked that there be assigned complete control of the collateral. It may have intended in certain contingencies to use the voting power thus secured for its own benefit. If it had such a purpose that purpose was not illegal. When men ask, as they have a right to ask, a complete assignment it is not ordinarily an idle gesture. Some underlying purpose may be presumed.

Relative to the 470 shares voted by Syme it is said that he caused it to be transferred to his bank less than ten days prior to the February meeting and that the same was voted in violation of the provisions of Code, section 3797, as amended by Acts 1928, ch. 456.

Conceding this to be true and with it out, if we count, as we should count, the 3,445 shares voted by Plummer under proxy from his bank these directors were actually

each of which shall be deemed to be an original, and all of which taken together shall constitute one and the same instrument.

"In witness whereof, the respective parties hereto, have hereunto affixed their hands and seals, all as of the day and year first above written:

| No. of Shares | | Name | |
|---|---|---|---|
| 543 | (Signed) | GEO. S. BERNARD | (Seal) |
| 465 | (Signed) | H. L. PLUMMER | (Seal) |
| 4,621 | (Signed) | HARVEY SEWARD | (Seal) |
| 9,207 | (Signed) | H. S. SEWARD | (Seal) |
| 11,994 | (Signed) | J. W. SEWARD | (Seal) |
| 575 | (Signed) | S. W. HOLDEN | (Seal) |
| 393 | (Signed) | W. A. TOTTY, JR. | (Seal) |
| 1,024 | (Signed) | FRED PILCHER | (Seal) |
| 1,872 | (Signed) | W. A. TOTTY | (Seal) |

"I, George M. Farney, of the city of Petersburg, State of Virginia, being duly sworn, deposes and says: The above instrument is a true copy of a voting trust agreement of stockholders of the American Hardware Company, Incorporated.

"G. M. FARNEY."

nominated not only by a majority of the stock present but by a majority of all of the outstanding preferred stock of the company.

■ Mr. Plummer and Mr. Syme were trustees, and, as we have seen, were officers of their bank. Manifestly there is bitterness of feeling among the stockholders, and the control of this $5,000,000 corporation was a matter of exceeding importance. Their banks were depositories and were anxious to retain its accounts. This, petitioner charges, was impolitic and unwise. It was their duty to serve impartially every interest, and in this instance it is possible that the interest of their banks might not coincide with the interest of the company. They should not have voted to nominate themselves, and should have declined to serve if elected. Their nomination and election should be set aside, and since this is true there should be a new election of all directors. In this new body the names of no one of these trustees should appear. Those elected should be, and no doubt will be, disinterested stockholders who have no interest in banks or in other enterprises which may conflict with the interests of the trunk company.

The order dismissing the petition should be set aside, and this case should remain upon the docket until that election which is here ordered is had.

The decree of the lower court will be reversed, and the cause remanded for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed and remanded.*