# Richmond

WALTER M. BOTT v. N. SNELLENBURG & CO., INC.

April 21, 1941.

Record No. 2346.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and
Spratley, JJ.

*Maurice B. Shapero,* for the plaintiff in error.

*Baird, White & Lanning, Brown & Williams* and *William H. Peace, II,* (Philadelphia), for the defendant in error.

BROWNING, J., delivered the opinion of the court.

We shall refer to the parties in this case as they were in the trial court, plaintiff and defendant, which is the reverse of their situation here. The case grows out of a contract between the plaintiff and the defendant and the Gay Manor Hotel Corporation for the sale to the defendants of hotel equipment, consisting of almost every species of personal property necessary to completely equip a modern hostelry.

The hotel was new. It was to be opened to the public in the early summer of 1939. A Mr. Gay was trying to launch it as one of the attractive places of entertainment at Virginia Beach, Virginia. He was having difficulties of a financial nature. He was making an effort to have the plaintiff, a Philadelphia firm specializing in the sale of hotel supplies and equipment, furnish the outfit for his enterprise. The credit department of the plaintiff turned him down. It advised him to associate himself with someone whose financial standing was sufficient to supply this important element. Mr. Gay set about to do this, and contacted Mr. Bott, the principal defendant, as a person who would meet the credit requirements of the plaintiff.

Mr. Bott at first demurred. It involved the investment of something like $20,000. He said that he was unwilling to guarantee the payment of so large an amount of money, being only a stockholder in the corporation. and that he would not do it "unless it was a part of his business." The record does not disclose just when he became so, but he was, at the time of the institution of this suit, vice-president of the corporation. Mr. Gay was its president. The contract to which we have alluded consists of three papers, which we will mention in the inverse order of their relation to the matter.

First, a formal agreement dated April 19, 1939, by which the plaintiff agreed to sell to Gay Manor Hotel Corporation, Walter M. Bott and Charles P. Gay, "All the certain articles of furniture, cotton goods, venetian blinds, draperies, silverware, chinaware, glassware and additions mentioned and itemized in a letter dated April 3, 1939, written by the department of contracts of N. Snellenburg & Company, Inc., to Mr. Charles P. Gay, Gay Manor Hotel, Virginia Beach, Virginia, which letter is incorporated in this agreement, by reference, for the sum of $19,572.24, *as set forth in said letter,* and draperies for private dining room and coffee shop for $64.50, or a total of $19,636.74, plus a carrying charge of $264.55,

upon terms and conditions hereinafter set forth." (Italics supplied.) The second and third paragraphs are as follows:

"(2) Snellenburgs agree to deliver and install the aforementioned furniture and furnishings to and in the Gay Manor Hotel on or about the 25th day of May, 1939."

"(4) It is understood and agreed that this contract shall be governed as to terms, conditions and interpretations by the laws of the state of Pennsylvania."

Second: Pertinent provisions of the letter of April 3rd, 1939, referred to in the "Agreement" are these:

"*Supplementing our original proposal of March 30,* the following is a compiled list of items showing final selections with omissions and deductions:

&ast; &ast; &ast; &ast; &ast;

"Specifications of furniture and furnishings to be as originally specified. *Shipment of furniture and furnishings f. o. b. respective factories,* delivery information in accordance with original estimate of March 30.

"Terms: It is understood that a substantial down payment will accompany *the signing of the contract,* another payment to be arranged prior to shipment of the merchandise and balance in equal monthly payments 30, 60 and 90 days after delivery." (Italics supplied.)

Third: The original proposal and estimate of March 30, 1939, referred to in the second division hereof contains the following:

"All furniture, lamps, cotton goods, silverware, china and glassware and miscellaneous *items are quoted f. o. b. respective factories.* The draperies are quoted installed. The venetian blinds are quoted installed. Carpet runners and solid section of foyer quoted completed installed.

"We further agree to supervise the installation and placement of each piece of furniture in their respective rooms.

"Delivery: We will be able to complete delivery within

five weeks from date of order. Each manufacturer has *evidence of* willingness to cooperate with us in this connection." (Italics supplied.)

The hotel corporation, through Mr. Gay, paid the plaintiff during the current seashore season about $11,000 of the contract price. Toward the close of the season, the defendants were being importuned by the plaintiff for the payment of the balance due on the contract, and also for the sum due it for what they termed "overflow", which was the price of articles needed (and furnished), but not foreseen, for the operation of the hotel, amounting to $1,143.06. The failure of the defendants to meet the demands of the plaintiff for payment brought on this suit. After action was instituted, the principal defendant, Mr. Bott, paid the balance due on the original contract price, being something over $7,000.00, but resisted the payment of the sum due for the "overflow" articles, and asserted that the plaintiff was due him, as an offset, the amount which had been paid by the hotel corporation for the transportation, delivery and installation of the equipment.

It was suggested that the hotel corporation had been adjudged a bankrupt. It was dropped as a defendant, and the case proceeded against Mr. Bott, with the result that the jury returned a verdict for the plaintiff against him for the price of the "overflow" articles, sometimes called the "open account", which was confirmed by the trial court. The defendant's counsel moved the court to strike out the plaintiff's evidence relating to the transportation, delivery and installation, which motion was sustained and judgment was entered against the plaintiff for the amount claimed by the defendant.

This ruling of the trial court is made the subject of cross error.

The defendant resisted liability on the open account on the ground that the articles, except two, were ordered by Mr. Gay of the hotel corporation; that he had nothing to do with the transaction; that he was a stranger to it;

and that he had no connection with either Mr. Gay or the hotel corporation which would render him liable.

■ The verdict of the jury, confirmed by the court, makes imperative our acceptance of the plaintiff's version of the matter, so far as it is a question of fact.

In the very beginning, Mr. Bott is revealed as an unwilling entrant in it unless it should become a part of his business. Like the proverbial money lender, he wanted some control of the business. He said as much, and when he was satisfied as to that feature he lent to the scheme his credit, and financial stability. He was well satisfied with what he had done, because he said to Mr. Holmead, the plaintiff's salesman: ''Holmead, after all I think it is a great proposition, too, or I would not have invested so much money.''

■ The evidence well warranted the jury in believing that Mr. Bott was a partner of Mr. Gay in the matter, and that he so held himself out to the public. He counselled the plaintiff's salesman and interior decorator to make a good job of his work in the placing and installation of the equipment; to make the hotel attractive to the public, and to that end he ordered portions of the merchandise himself, namely, the carpet for the stairway and attractive matting for the basement; he told him that what Mr. Gay did would be all right with him. He okayed the beauty parlor and its decorations, and approved the beach equipment, and in a long distance telephone talk about the last of October or first of November of 1939, with Mr. Hahn, Snellenburg's wholesale credit manager, he said that ''he understod the balance would have to be paid, but that it would be necessary for him to wait approximately ten days; at the expiration of which time he expected everything to be clear and reports in and he would then come to Philadelphia and ask for perhaps some arrangement as to time of payment.''

These observations, made from an examination of the evidence, show very clearly Mr. Bott's relationship and

connection with the whole matter. They show that he was more substantially interested in the venture than anyone else, and this is accentuated by the fact that he signed the contract which fixed his liability.

▆▆ His contention as to the cost of transportation, delivery and installation of the merchandise covered by the contract is equally unsound. The plaintiff did all that it agreed to do in this relation when it installed the draperies, venetian blinds and carpets. It required experts to do this, which was foreseen by the parties to the contract, else it would not have been provided for by being mentioned after each one of the articles. In two portions of the composite contract it was specified that the merchandise, subject to the exceptions noted, was to be shipped "f. o. b. respective factories."

Black's Law Dictionary, Third Edition, p. 736, defines this trade or mercantile term:

"When used in connection with the price of goods, the term is commonly construed as fixing only the price, and not as relating to the time, place or mode of delivery."

It is urged by the defendant that Paragraph 2 of the agreement supersedes and outweighs what we have adverted to as the effect of the method of shipment, i. e., "f. o. b. respective factories." Clause Two provides that the plaintiff agreed to deliver and install the furniture and furnishings to and in the Gay Manor Hotel on or about the 25th day of May, 1939. We perceive that clause to specify the date of delivery, which the method of shipment did not do. To take it to mean that the plaintiff would pay the costs of transportation, delivery and installation would be to negative the effect of other specific conditions of the contract, and this, a general statement of that character, will not be held to do.

▆ It is elementary that where several papers constitute one contract, "they must be given effect as one document, and all speak as of the same date." *Weinroth v. Mill End Clothing Co., Inc.* (1925), 84 Pa. Sup. Ct.

107. See Restatement of Contracts, sec. 208(b), II, III. It was said in *Harrity* v. *Continental-Equitable Title & Trust Co.*, 280 Pa. 237, 124 A. 493:

"This specific provision was not destroyed by the later general clause. * * * It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. * * * Moreover, treating the clauses as irreconcilable, the general provisions as to management must give way to the special provision as to sale, under the rule, where there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground."

Of great importance is the construction which the parties themselves put upon the contract. The cost of the things we are considering was paid by Mr. Gay for the hotel corporation, and the plaintiff's salesman testified that "it was clearly understood that Mr. Gay was to pay all freight charges." This circumstance is quite controlling, that no complaint was made by the defendant as to the freight charges until the suit was brought against him. When the matter was discussed between the salesman and Mr. Bott, the latter said that he did not feel that he should pay because he had bought the hotel in. This reasoning, of course, could not arise and be availed of until the fact which he stated had occurred, which was long after his liability attached. Seven months after the contract had been entered into and about five months after the merchandise had been delivered, and installed, and numerous conferences about the matters which were in hand and which were constantly the subject of consideration and attention, and no mention of the claim of the defendant as to the freight, delivery and installation charges, is a circumstance tending strongly to prove that the contention was an afterthought.

When Mr. Gay was introduced as a witness to prove

the amounts that the hotel corporation had paid on the account we have been speaking of, he was asked when he made up the statement of the costs, and his reply was, "After I found out from Mr. Shapero that the contract included delivery and installation."

As to the weight to be given to the interpretation of the contract by the parties to it, see *Sarver's Estate, In re,* 132 Pa. Sup. Ct. 238, 200 A. 709, in which it was said:

"The well recognized rule is that if a written instrument may have two interpretations, the courts, in endeavoring to determine the intention of the parties will follow the one which they put upon it by their own actions."

We find no error in the instructions.

The trial court was right in confirming the verdict of the jury, but it was wrong in sustaining the motion to strike which we have referred to, and in entering judgment for the defendant against the plaintiff on the cross-error assigned. The judgment is therefore affirmed in part and the case remanded with direction to enter judgment for the plaintiff in accordance with the views expressed in this opinion.

*Affirmed in part,
modified and remanded.*