COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Agee
Argued at Alexandria, Virginia


THOMAS JOSEPH GOUDREAU

                                   MEMORANDUM OPINION* BY
v.    Record No. 2720-00-4         JUDGE G. STEVEN AGEE
                                        JULY 10, 2001
KATHERINE LYNN GOUDREAU


         FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  R. Terrence Ney, Judge

         Carl P. Horton for appellant.

         Christopher W. Schinstock (James Ray
         Cottrell; Gannon, Cottrell & Ward, P.C., on
         brief), for appellee.


     Thomas J. Goudreau (father) appeals the October 24, 2000

decision of the Fairfax County Circuit Court denying his motion

concerning certain visitation rights to his two children under a

prior Custody Order dated June 29, 1999 (the Custody Order).

Father alleges the trial court erred in its interpretation of

the Custody Order's plain language regarding "extended

weekends."  For the following reasons we agree with father and

remand this matter back to the trial court for consideration

consistent with this opinion.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

The Custody Order provided Katherine Lynn Goudreau (mother) with sole custody of the parties' two minor children and leave to relocate the children to Utah. Prior to the Custody Order, the parties shared custody of their children in Virginia. Mother, however, made plans to remarry and relocate to Utah in 2000. On mother's petition, and over father's objections, the Fairfax County Circuit Court, by Judge Brown, issued the Custody Order.

The Custody Order granted father visitation with the children during the school year under Sections 2A and 2B, which differentiated visitation before and after June 6, 2000. Incorporated by reference to the Custody Order was an attached exhibit styled "Proposed Custodial Access" (Access Plan), which provides in pertinent part:

Proposed Custodial Access

[Father] to have children for Spring Break every year.

[Father] and [mother] to alternate Thanksgiving holidays with [father] having the children [in 2000] . . . .

[Father] and [mother] to split the Christmas vacation with the children with [father] having the children on Christmas [in 1999] . . . .

[Father] to have the children over the extended weekends throughout the school year.

        *    *    *    *    *    *    *

-

> [Father] may visit the children when he is
> in Utah not more than one weekend/month when
> not otherwise scheduled for a visitation
> during that month excluding the summer
> vacation period.
>
> *      *      *      *      *      *      *
>
> The proposed schedule for the remainder of
> 1999 through the 2000 school year is as
> follows:
>
> [A breakdown, per the 1999-2000 school
> calendar, of the parties' allotted times
> with their children was listed through the
> end of school on June 6, 2000].

Father requested clarification from the trial court when the parties could not agree as to the Custody Order's application to November 2000 when there were several extended weekends, in addition to father's scheduled Thanksgiving visitation period. Father interpreted the language of the Access Plan "to have the children over the extended weekends throughout the school year" to mean exactly that. Mother, who drafted the plan, argued the intent was only to allow father visitation one weekend a month and for November 2000 that was the Thanksgiving weekend.

The trial court, with Judge Ney presiding, reviewed the Custody Order and the transcript from a January 20, 2000 hearing before the court, Judge Roush presiding. There, on January 20, 2000, the parties argued over their rights under the Custody Order as to exchanging the children and the father's rights to information on the children. As to the provision on extended

-

weekends, the trial court interpreted the Custody Order as follows:

> I think that the language ["father] to have children over the extended weekends throughout the school year,["] is to express the general understanding of the parties that for months that have extended weekends, those will be the weekends selected. And I think that the proposed schedule which then falls out, which is then set out which [father's counsel] pointed out, is then referred to on page 329 of [mother's previous] testimony . . . states that this would be the schedule for the following year, this is the plan schedule. I think that [what the] schedule demonstrates is that [father] is going to have these children probably once a month, because almost every month there's a provision for him to have the children, but most importantly, the time for each of those weekends is the long weekend . . . . I don't read the general language with regard to extended weekends beyond one long weekend a month. I think that's the whole intention of the parties, and I think it's reflected in the specifics of the schedule.

The trial court then ruled that the "plain language is modified by the specifics of the weekends that are set out on a month by month basis" and denied father's motion by the October 24, 2000 order.

ANALYSIS

Court orders are subject to the same rules of construction that apply to other written instruments. See generally Shultz v. Hansbrough, 76 Va. 817 (1882). When a trial court applies the unambiguous language of an order, the sole issue on appeal is a question of law "which can readily be ascertained by this

-

Court."  Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).  Upon our review of the October 24, 2000 order, we find error, as a matter of law, in the trial court's interpretation of the plain language of the Custody Order.

The Custody Order clearly states that beginning on June 6, 2000, father is entitled to the access reserved to him in the attached plan including:  "[Father] to have children over the extended weekends throughout the school year . . . ."  The extended weekends provision contains no limiting terms and neither does the main body of the Custody Order nor the other provisions of the Access Plan.  This provision plainly and without reservation provides father with all the extended weekends in the school year except those otherwise specifically covered by other direct provisions of the Custody Order: Thanksgiving and Christmas.  Yet, the trial court, while recognizing the unambiguous meaning, accepted mother's argument to search for another interpretation by drawing analogies from the specific dates for the 1999-2000 school year in order to change the clear wording of the Custody Order.  The trial court went on to say that the Thanksgiving weekend was an extended weekend when it was assigned to father and that would be the only weekend father could have in November.  We find these conclusions plainly wrong based on the clear and unambiguous language of the Custody Order.

-

The extended weekend provision is clear on its face, and it is not limited by the date specific 1999-2000 school year visitation provisions in the Access Plan. While the specific provisions for the 1999-2000 school year likely override the general provisions of the Custody Order as to that year, that argument is moot for periods after the 1999-2000 school year. The assertion made in the dissent that the date specific provisions of the Access Plan for the 1999-2000 school year are made effective for subsequent years is not supported by the plain language of the Custody Order or the record. To the contrary, the Custody Order specifically differentiates between periods before and after June 6, 2000.

Neither the Custody Order nor the incorporated Access Plan contain language indicating the 1999-2000 date specific schedule is illustrative of the "intent" of the Custody Order or that it is to be applied for any purpose other than setting specific visitation before June 6, 2000. Absolutely nothing in the Custody Order provides a limiting "intent" factor to the plain language of the extended weekend provision. To the contrary, father's visitation rights are specifically divided in the Custody Order between those occasions prior to June 6, 2000 and those thereafter (Custody Order Sections 2A and 2B). If the school years after the 1999-2000 year were to be governed by the same distinct arrangements made in the 1999-2000 provision, there would be no purpose to differentiate the years after June

-

6, 2000, and would make subsections A and B of the Custody Order superfluous.  Also, the Thanksgiving holiday weekend, per the provisions of the Access Plan, is not an extended weekend; it is specifically differentiated from the other weekends in the school year.  To hold otherwise would require interpreting the specific Thanksgiving provision to be an extended weekend when it is father's year and not an extended weekend when it is mother's year.

While mother may have intended the Custody Order to limit father's visitation in or out of Utah to once a month, this intent is not a part of the Custody Order which is complete and unambiguous.  Any ambiguity is created, not by the words of the Custody Order, but rather, by mother's alleged intent asserted to change the Custody Order in her favor.[1]  Under the plain language of the Custody Order, father is entitled to every extended weekend during the school year, except where there are specific provisions in the Custody Order to the contrary, i.e.

---

[1] If there were any ambiguity on the face of the Custody Order, we should construe it against mother as the scrivener. "'[I]t is a familiar legal maxim that ambiguous contractual provisions are construed strictly against their author.'" Jennings v. Jennings, 12 Va. App. 1187, 1194, 409 S.E.2d 8, 13 (1991) (quoting American Realty Trust v. Chase Manhattan Bank, 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981)).  While this Custody Order is not a contract, the Access Plan was unilaterally created and written by mother on her motion for sole custody upon her relocation to Utah, against father's wishes.  It would be a harsh result to allow mother to dictate what the Custody Order may or may not provide.

-

Thanksgiving and Christmas.  There is nothing for the trial court to interpret.

We reverse the October 20, 2000 trial court order denying father's motion[2] and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

[2] The motion before the trial court on October 20, 2000 was for clarification of the terms of the Custody Order entered June 29, 2000.  There was no motion before the trial court, and certainly no evidence, to modify the Custody Order.  Any future modification of this Custody Order will require notice, opportunity to be heard, and a specific order.

-

Annunziata, J., dissenting.

I respectfully dissent from the majority opinion and would affirm the trial court's interpretation of the parties' agreement.

Interpretation, the ascertainment of the meaning of contractual words, is an essential element in considering the legal effect of informal or formal agreements. 11 Samuel Williston, A Treatise on the Law of Contracts § 30:1 (4th ed. 1999). Determining the intent of the parties is the lodestar of interpreting a written document. Williston, supra, § 30:2; see also Lenders Fin. Corp. v. Talton, 249 Va. 182, 189, 455 S.E.2d 232, 236 (1995).

While the court "should not undertake to construe away the plain letter of a contract," Seward v. American Hardware Co., 161 Va. 610, 625, 171 S.E. 650, 659 (1933), where the language of a contract is susceptible of more than one construction, it is the duty of the court to construe the language of the agreement, pursuant to established rules of construction. Great Falls Hardware Co. of Reston v. South Lakes Village Ctr. Associates, 238 Va. 123, 125-26, 380 S.E.2d 642, 643 (1989). In construing a contract the intention of the parties must be ascertained from the entire instrument, as expressed in or fairly implied in the writing. Bott v. N. Snellenburg & Co., 177 Va. 331, 338, 14 S.E.2d 372, 374 (1941). All the provisions of a contract shall be taken into consideration and reconciled,

-

if possible, so that the true intent of the parties to the contract may be ascertained. Id. at 339, 14 S.E.2d at 374; Justice v. Stuyvesant Ins. Co., 265 F. Supp. 63, 65 (S.D. W.Va. 1967) ("A desire to effectuate the intentions of the parties creates the necessity of looking to the constituent elements of the contract, elucidating one by the other and reconciling them, if practicable, to one common intent or design present to the minds of the contracting parties."). "It is a well-recognized principle that a contract should be construed as a whole, thereby gathering meaning from its entirety and not from particular words, phrases or clauses." Northern Virginia Sav. & Loan Ass'n v. J.B. Kendall Co., 205 Va. 136, 142, 135 S.E.2d 178, 183 (1964); see also Roanoke Marble & Granite Co. v. Standard Gas & Oil Supply Co., 155 Va. 249, 254, 154 S.E. 518, 520 (1930).

"In reconciling . . . provisions, any apparent inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter." Chantilly Constr. Corp. v. Commonwealth, 6 Va. App. 282, 294, 369 S.E.2d 438, 445 (1988); see also Bott, 177 Va. at 339, 14 S.E.2d at 374-75 ("[W]here there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground."). In construing contract documents as a whole, the court will not treat any word or clause as

-

meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it. The contract must be construed so as to give effect to every part of it, as parties are not presumed to have included a provision of no effect. Ross v. Craw, 231 Va. 206, 214, 343 S.E.2d 312, 317 (1986); see also First Am. Bank of Virginia v. J.S.C. Concrete Constr., Inc., 259 Va. 60, 69, 523 S.E.2d 496, 501 (2000). Thus, "when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language." First Am. Bank, 259 Va. at 69, 523 S.E.2d at 501.

In reaching its conclusion in this case, the trial court found:

> [T]he language, "Tom to have children over the extended weekends throughout the school year," is to express the general understanding of the parties that for months that have extended weekends, those will be the weekends selected [for visitation with Tom]. And I think that the proposed schedule which then falls out . . . is the plan schedule. . . . I don't read the general language with regard to extended weekends to be a blanket right for long weekends beyond one long weekend a month. I think . . . the whole intention of the parties . . . [is] reflected in the specifics of the schedule.

A close review of the provisions in question supports the trial judge's interpretation of the clauses at issue. The visitation schedule for the father, or what the parties denominated his "access" to the children, was set forth in a one

-

page proposal, drafted by the mother, and adopted, with certain modifications, by the trial court.  The plan is drafted in two parts.  It begins with general provisions addressing issues such as which parent is to have the children during spring break, Thanksgiving, Christmas and summer vacation.[3]  Among those provisions is found the language in which the current dispute is rooted, to wit, "[father] to have children over the extended weekends throughout the school year."

---

[3] The first half of the document entitled "Proposed Custodial Access" provided the following:

> Tom to have children for Spring Break every year.
> Tom and I to alternate Thanksgiving holidays with Tom having the children on the even years and Katherine during the odd years.
> Tom and I to split the Christmas vacation with the children with Tom having the children on Christmas during the odd years and Katherine during the even years.
> Tom to have children over the extended weekends throughout the school year.
> Summer vacation to be evenly divided with Tom having the children during the first half of the summer during the odd years and Katherine during the even years.  The summer vacation period will be defined as the first weekend after school is out to the weekend prior to the start of school.
> Tom may visit the children when he is in Utah not more than one weekend/month when not otherwise scheduled for a visitation during that month excluding the summer vacation period.
> Tom may converse with the children at any time they are with me (and vice versa) by phone, e-mail or regular mail during non-sleeping hours.  The children's bedtime will be defined as 9:00 p.m. in whichever time zone they are located.

-

The second half of the plan is entitled, "The proposed

schedule for the remainder of 1999 through the 2000 school year

. . . ."[4]  Although the schedule is, on its face, limited to a

---

[4] The second half of the plan provided the following:

> June 28 through July 23, 1999 – boys with
> Tom.
> July 24 through August 20, 1999 – boys with
> Katherine.
> August 21 through September 3, 1999 (after
> school) – boys with Katherine for school.
> ***Start of school is August 25, 1999***
> September 3 (after school) through September
> 6, 1999 – boys with Tom for Labor Day
> weekend.
> September 6 through October 6, 1999 (after
> school) -- boys with Katherine for school.
> October 6 (after school) through October 10,
> 1999 – boys with Tom for long weekend
> (school out on 7th and 8th for UEA).
> October 10 through October 28, 1999 (after
> school) – boys with Katherine for school.
> October 30, 1999 through December 21, 1999
> (after school) – boys with Katherine for
> school and Thanksgiving holiday since 1999
> is odd year.
> December 21 (after school) through December
> 26, 1999 – boys with Tom for Christmas
> vacation (boys with Tom for Christmas since
> 1999 is an odd year).
> December 26, 1999 through January 14 (after
> school), 2000 – boys with Katherine for
> second half of Christmas vacation and
> school.
> January 14 (after school) through January
> 17, 2000 – boys with Tom for long weekend
> (school out on 17th for Human Rights
> Holiday).
> January 17 through February 18 (after
> school), 2000 – boys with Katherine for
> school and one teacher in-service day off
> from school on January 21, 2000.
> February 18 (after school) through February
> 21, 2000 – boys with Tom for long weekend
> (school out on 21st for President's Day).

-

single school year, beginning and ending with summer visitation, the trial court made it effective for subsequent years until changed by court order.

In this section of the plan, as incorporated into the decree, specific dates for the children's visitation with each parent were set forth; the division of the summer period for visitation by date was specified, as were the Christmas and Easter breaks. All the remaining dates in the adopted schedule refer to weekend visitation. In no instance did the specific schedule set forth visitation with the father in Virginia on more than one weekend per month, and in every instance, the once monthly visitation with father was set on a weekend in which the children had at least one extra day off from school. In addition, no long weekend visitation was scheduled in those

---

February 21 through March 14 (after school), 2000 – boys with Katherine for school.
March 14 (after school) through March 17, 2000 – boys with Tom for long weekend (school out on 17th for teacher in-service).
March 17 through April 20 (after school), 2000 – boys with Katherine for school.
April 20 (after school) through April 30, 2000 – boys with Tom for Easter break.
April 30 through May 26 (after school), 2000 – boys with Katherine for school.
May 26 (after school) through May 29, 2000 – boys with Tom for Memorial Day Weekend.
May 29 through June 6, 2000 – boys with Katherine for school.
June 6 through first half of summer – boys with Katherine for summer vacation.
Second half of summer – boys with Tom.

-

months in which an extended holiday visitation was planned such as Christmas, Easter, and summer vacation.

The majority opinion fails to assign any meaning to the specific schedule set forth in the parties' agreement, noting that the specific schedule was for one school year only and was not intended to govern in subsequent years. The conclusion ignores the trial court's specific order, however, that the plan, both its general and specific provisions, was to govern he parties' conduct from the date of the order until modified by the court. The analysis also fails to explain why the parties who, after purportedly agreeing to visitation on every extended weekend of the school year, at the same time implement, by agreement, a schedule which defines weekend visitation in a far more limited way.

The custody provisions are set forth in the court order in paragraph 2A which addresses visitation before June 6, 2000, and paragraph 2B which addresses visitation after June 6, 2000. The majority reasons that this differentiation of periods establishes the court's intent that the specific schedule set forth in the Plan for the 1999-2000 school year is not to govern the parties' visitation schedule in subsequent years.[5] The "differentiation" reflected in sections 2A and 2B, however, is

---

[5] The majority acknowledges that, "the specific provisions for the 1999-2000 school year likely override the general provisions of the Custody Orders as to that year . . . ."

-

only with respect to summer visitation and the additional right accorded to each parent to exercise visitation when the children are visiting with the other parent.[6] The Proposed Access Plan, with both its general provisions and specific schedule, is otherwise adopted in its entirety and without modification by the court.

In short, the majority opinion fails to construe the parties' agreement as a whole and confines itself to interpreting the general phrase which states that father is "to have children over the extended weekends throughout the school year." In so doing, it addresses the general provision regarding visitation outside the context of the entire agreement and thereby finds the import of the phrase clear and requiring no interpretation. However, when read together with the specific visitation schedule that follows, as rules governing the construction of written documents require, the apparent clarity is dispelled, and the expression of the parties' intent becomes manifestly inconsistent.

To properly interpret this document, the facially inconsistent general provisions must be reconciled with the

---

[6] In paragraph 2B, for example, the father is awarded enlarged visitation in the summer; instead of sharing the summer period equally with the mother, beginning in the summer of 2001, father is awarded visitation for the entire summer with the exception of a short period after school ends and before it begins in the fall.

-

specific.  See Seward, 161 Va. at 625-26, 171 S.E. at 659.[7]

Furthermore, in reconciling provisions, any apparent

inconsistency between a clause that is general and broadly

inclusive in character, and one that is more specific in

character should be resolved in favor of the latter.  Chantilly,

6 Va. App. at 294, 369 S.E.2d at 445; see also Bott, 177 Va. at

339, 14 S.E.2d at 374-75.  Applying the relevant principles of

law in this case would result in affirming both the reasoning

and the conclusion of the trial court.

Finally, I note that adherence to the visitation schedule

as interpreted by the majority, would, at certain times of the

school year, require the children to travel from Utah to

Virginia, two or three times in one month, a schedule which

improperly imposes unreasonable burdens on the children and

their school year schedule.  See Pettibone Wood Mfg. Co. v.

Pioneer Constr. Co., 203 Va. 152, 157, 122 S.E.2d 885, 889

(1961) (construction of an agreement should be reasonable and

just).

In short, I find that the parties themselves defined the

term, "extended weekend" by setting forth a specific schedule

---

[7] The inconsistency arises by virtue of the fact that the former may be interpreted as granting husband from the very inception of his visitation schedule as ordered in the court's decree every extended weekend in the school year irrespective of the number of extended weekends falling within any one month; under the latter specific provision, the husband's visitation is limited to no more than one time each month and coincident with an extended weekend.

-

implementing the general visitation plan in their agreement.  I further find that the trial court did not err in its interpretation of the agreement.  It is both reasonable and just and avoids the undue burden on the children that inheres in husband's proposed interpretation.[8]  I would affirm.

---

[8] In an earlier proceeding brought before the court on husband's rule to show cause, a similar interpretation of the agreement language was obtained.  In that proceeding the husband asked the court to hold wife in contempt on the ground, inter alia, that she had deprived him of one of the extended weekends intended under the agreement.  The weekend in question was a weekend not delineated in the specific schedule set forth in the decree, although it was a "long" weekend.  However, it was one of two "long" weekends falling in the month of October, the first having been designated as the extended weekend for visitation with husband.  The court dismissed the rule, finding none of the allegations had been proved, including the one premised on husband's asserted interpretation of the terms "extended" weekend.