COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


RICKY I. PARSONS

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1051-11-4                  JUDGE ROSEMARIE ANNUNZIATA
                                                          MARCH 20, 2012
DIANA L. PARSONS


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Brett A. Kassabian, Judge

            John E. Byrnes (Ryan M. Witkowski; Condo Kelly & Byrnes, P.C.,
            on briefs), for appellant.

            Gerald R. Curran (Sonya L. Powell; Shoun, Bach, Walinsky &
            Curran, P.C., on brief), for appellee.


        Ricky I. Parsons (husband) appeals the trial court's equitable distribution award. Husband

argues that the trial court abused its discretion by (1) failing to abide by the expressed intent and

terms of the parties' pre-marital agreement; (2) violating Code § 20-109(C) and ordering relief that

was inconsistent with the express terms and intent of the parties' pre-marital agreement;

(3)(a) ordering equitable distribution that contradicted the terms of the parties' pre-marital

agreement; (3)(b) failing to find that the Utterback Store Road real estate was husband's separate

property despite contradictory language in the parties' pre-marital agreement; (3)(c) reading or

inserting substantive provisions into the two "unless" provisions in Section III(C) of the parties'

pre-marital agreement, which were not present and contradict the express intent of the agreement;

(3)(d) failing to follow the terms of the pre-marital agreement; (4) not awarding husband a separate

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

interest in the Utterback Store Road real estate; (5) not classifying the income earned by husband and the result of husband's personal efforts as his separate property, contrary to the language in the parties' pre-marital agreement; (6) not awarding husband the UBS account as his separate property; (7) holding husband liable for the entire debt on the line of credit; (8) ordering the Utterback Store Road real estate to be sold; (9) ordering husband to pay Diana L. Parsons (wife) $331,294; (10) disregarding husband's tracing analysis; (11) excluding from evidence bank account statements, wife's social security earnings statements, and deposit slips; (12) refusing to address the boat debt and excluding husband's evidence regarding the amount of that debt; (13) denying husband's motion for declaratory judgment; and (14) denying husband's motion *in limine*. Upon reviewing the record and briefs of the parties, we affirm the trial court's decision in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

BACKGROUND

On October 31, 1991, husband and wife signed an agreement, titled "Parsons/Landres Pre-Marital Agreement" (the pre-marital agreement). The pre-marital agreement addressed property rights, support, debts, and obligations.

The parties married on November 3, 1991, and two children were born of the marriage. Husband was the primary wage-earner during the marriage, wife having ended her employment in January 1993 after the parties' first child was born.

On March 11, 2009, the parties separated. On April 6, 2009, wife filed a complaint for divorce, to which husband responded and filed a "Counterclaim." On husband's motion, the trial court incorporated the pre-marital agreement into an order on May 6, 2009.

Subsequently, husband filed a motion for declaratory judgment, asking the trial court to find the real estate located on Utterback Store Road (the Utterback Store Road property) to be his

separate property pursuant to the pre-marital agreement.  Wife objected to the motion, and the trial court denied husband's motion.  The trial court held that the issue should be determined at the equitable distribution hearing.

Thereafter, husband filed a motion *in limine*, asking the trial court to rule the parties had waived equitable distribution in the pre-marital agreement.  Wife objected to the motion, and the trial court denied the motion.

After hearing testimony and argument in a three-day hearing, the trial court took the matter under advisement and asked counsel to submit their closing arguments in writing.  On March 3, 2011, the trial court announced its ruling.  It rejected husband's argument that the pre-marital agreement "does not allow for any marital property and that all property must be separate property."  The trial court held that the Utterback Store Road property and the UBS account were not separate property, as defined by the pre-marital agreement, and were subject to equitable distribution.  The trial court reviewed the factors of Code § 20-107.3(E) in detail and awarded fifty percent of the equity in the Utterback Store Road property to wife and fifty percent of the UBS account to wife.  The trial court held the husband responsible for withdrawing $331,294 from the joint line of credit account, and ordered husband to pay that amount to wife.  The trial court found the husband's evidence insufficient to prove any existing debt on the boat and made no award on that claim.

On April 8, 2011, the trial court entered the final order of divorce, incorporating its rulings from March 3, 2011.  Husband filed a motion to reconsider, which was denied by the trial court.  This appeal followed.

ANALYSIS

I.  The trial court's interpretation of the pre-marital agreement

A.  Pre-Marital Agreement

Husband contends the trial court erred in interpreting the pre-marital agreement and, as a result, erred in applying equitable distribution principles to divide the Utterback Store Road property and the UBS account.

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms."  Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002) (citing Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995)).

> On appeal, the Court reviews a trial court's interpretation of a contract de novo.  Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citing Wilson v. Holyfield, 227 Va. 184, 313 S.E.2d 396 (1984)) ("we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself").

Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006).

> "[I]t is the court's function to construe the contract made by the parties, not to make a contract for them.  The question for the court is what did the parties agree to as evidenced by their contract.  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson, 227 Va. at 187, 313 S.E.2d at 398); see also Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 351 (2008) (*en banc*).

Accordingly, our review of the trial court's interpretation of the pre-marital agreement is based on the pre-marital agreement's language as it relates to the Utterback Store Road property and the UBS account.

## B. Utterback Store Road property

Prior to the marriage, husband owned property on Middle Valley Drive. The parties lived in the Middle Valley Drive property when they married. The parties acknowledge in the pre-marital agreement that the Middle Valley Drive property is husband's separate property. It states:

> It is contemplated that upon the marriage of the parties, they will live in the property known as Lot Eight (8) of the subdivision known as Middle Valley in Fairfax County, Virginia . . . . Irrespective of whether they do or do not, it is agreed that this specific property, as well as all other property listed in the attached Exhibit, or any real estate purchased in replacement thereof, shall, as other separate property, remain the sole and separate property of the party of the second part [husband].

In March 2000, the parties purchased the Utterback Store Road property and titled it as tenants by the entirety. They sold the Middle Valley Drive property, built a house on the Utterback Store Road lot, and moved into it.

In support of his contention that the court erroneously held that the Utterback Store Road property was marital property subject to equitable distribution, husband relies, first, on Section III(C) of the agreement, which provides that "any replacement property" of the Middle Valley Drive property is to be treated as husband's separate property and not subject to equitable distribution. The evidence supports the conclusion that the Utterback Store Road property was "replacement property" for the Middle Valley Drive property. It was "replacement property," that was held jointly, however.

The pre-marital agreement addresses property that is jointly owned in Section III(C), and states:

Unless it is clearly established that the parties are the joint owners of the property and that there is an intent on their part that the joint ownership shall vest an interest in each party, same shall not be the subject of an Equitable Distribution hearing, but shall be subject to division in accordance with the ownership interest stated in said agreement.

Unless specifically reserved herein, or unless it is clearly determined that the parties own property jointly, each party does waive any and all right to make a claim for property titled in the other's name, or having same designated as marital property and considered in an equitable distribution hearing in connection with a dissolutionment [sic] of the marriage.

There is no dispute that the parties are joint owners of the Utterback Store Road property because the property is titled in both names as tenants by the entirety. Thus, to address the question, the trial court focused on whether the parties intended "that the joint ownership shall vest an interest in each party." The trial court explained:

Assuming that the second property is, in fact, held jointly, I suppose I'm going to need to start hearing some evidence on what the intent was as to whether or not that's joint ownership or not. And if it is, I can go into equitable distribution; if it's not, I can go into partition.

Husband objected to this interpretation and argued that the parties waived equitable distribution under Section V of the pre-marital agreement, the title of which is "Release of Marital Rights." Section V states:

Except for the rights granted to surviving spouses, each party hereby releases, waives and renounces all rights arising out of the marriage contract, whether the same be statutory, common law, or arises out of case law. . . . Each party specifically acknowledges that they are aware of the statutory provisions of the Code of Virginia, 1950, as amended, specifically, under Section 20-107.1, 107.3, 108, 109 and 109.1, which said statutes generally provide for support of spouses, lump sum settlement and equitable distribution of property. It is their intention, and they do, by executing this agreement, waive any and all rights provided for them under said statutes or under the general jurisdiction of a court of competent jurisdiction, and the parties agree that this Pre-Marital Agreement may be offered as and for the full and final

- 6 -

settlement of all property rights and support rights, to the extent provided by law in any divorce action.

The trial court disagreed with husband's contention that the parties waived their rights under the equitable distribution statute and found that the "Release of Marital Rights" provision and the waiver language found in Section III(C) of the agreement did not encompass jointly-owned property. The trial court explained:

> Finally, while the Court agrees that the purchase of the Utterback Store Road property could be consistent or could be construed as a replacement for the former Springfield property residence, I interpret the agreement to not apply to a replacement property that is titled jointly by tenancy by the entirety.

> Consequently, the Court finds that the Utterback Store residence is not separate property as defined by the agreement. And the Court finds that because that property was jointly owned as tenants by the entirety that there was intent to convey an undivided ownership interest to both of the parties in this case. And for that reason, the Court concludes it is subject to equitable distribution.

We find no error in the trial court's interpretation of the pre-marital agreement. The reading of the pre-marital agreement husband advances ignores the limiting effect of the two "unless clauses" and fails to give effect to the contract as a whole. See Bott v. N. Snellenburg & Co., 177 Va. 331, 339, 14 S.E.2d 372, 374 (1941) ("'It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument.'" (quoting Harrity v. Continental-Equitable Title & Trust Co., 124 A. 493, 494 (Pa. 1924))).

Stated differently, husband's reliance on the waiver language provision of Section V of the pre-marital agreement, effectively reads out of the pre-marital agreement language that specifically addresses the parties' intended treatment of jointly-held property and whether such property was to be made subject to Virginia's equitable distribution statute upon dissolution of their marriage. That limiting specific language is found in the two "unless clauses" in

Section III(C) of the pre-marital agreement. "[I]n construing contract documents as a whole, 'the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it.'" First American Bank v. J.S.C. Concrete Constr., Inc., 259 Va. 60, 69, 523 S.E.2d 496, 501 (2000) (quoting Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989)).

Significantly, the "first unless clause," specifically, excepts[1] from the waiver of marital rights property that is jointly owned where "an intent on [the parties'] part that their joint ownership shall vest an interest in each party" is clearly established. The "second unless clause" evidences the same intent to exclude jointly-owned property from the waiver of marital rights language of the pre-marital agreement.

When all the provisions addressing whether, upon divorce, the parties' property was to be divided pursuant to equitable distribution principles are read in conjunction, as they must be, any inconsistency "between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter." Chantilly Constr. Corp. v. Commonwealth, 6 Va. App. 282, 294, 369 S.E.2d 438, 445 (1988) (citing Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 558 (1904)); see also Bott, 177 Va. at 339, 14 S.E.2d at 375 ("'[W]here there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground.'" (quoting Harrity, 124 A. at 495)).

We find no error in the trial court's interpretation of the pre-marital agreement and in its finding that jointly-owned property was subject to equitable distribution when the evidence

---

[1] Husband on brief argues that neither "unless" modifies the equitable distribution waiver. Husband's argument is based on a misapprehension of the word "unless," which, by definition and in effect, establishes an exception to the waiver of rights provisions. The words, "unless" and "except" are synonymous. "[W]here, as here, the terms of the agreement are unambiguous, courts must 'adhere to the plain meaning of [the agreement's] stated terms.'" Stroud v. Stroud, 54 Va. App. 231, 237, 677 S.E.2d 629, 632 (2009) (quoting Southerland, 249 Va. at 588, 457 S.E.2d at 378).

"clearly established" the parties intended that the "joint ownership . . . vest an interest in each party." The Utterback Store Road property met those criteria: It was jointly-owned and, as the trial court found, their ownership of the property as tenants by the entirety created an undivided ownership interest in each party.

In short, we conclude that the two "unless clauses," being the more specific clauses relating to the treatment of the parties' real property, limit the general language of the waiver found in the pre-marital agreement. We further conclude that the evidence supports the trial court's conclusion that the Utterback Store Road property was subject to equitable distribution. The property was jointly owned, as tenants by the entirety, giving both parties an undivided interest in the whole and jointly titled with the express intent to establish an interest in the parties.

Did the trial court err in failing to award husband a separate interest in the
Utterback Store Road property?

After reviewing the factors of Code § 20-107.3(E), the trial court awarded wife fifty percent of the equity in the Utterback Store Road property. Ordinarily, "[a] partner in a marriage owes his labor during the marriage to the marital partnership[;] [t]he fruits of that labor, *absent express agreement*, are marital property." Stainback v. Stainback, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990) (emphasis added). In this instance, however, there is an express agreement. Under the terms of Section III(C) of that agreement, "income of all kinds" earned during the marriage constitutes "separate property." The agreement thus alters the tracing analysis. On appeal, husband contends the trial court did not consider the evidence establishing his exclusive contributions to the acquisition of the property and that the evidence fails to support the award to wife. We agree.

Although the trial court rejected the testimony by husband's expert and the analysis he did to trace husband's separate funds into the Utterback Store Road property, see Street v. Street,

25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*), all the available evidence fully supports husband's contentions. The husband's evidence regarding his monetary contributions was uncontroverted. Husband paid the costs of acquiring the lot on which the house was built. He mortgaged his separate Middle Valley Drive property for $340,000 and applied the proceeds toward the development costs of the Utterback Store Road home, and he likewise applied the entire net sale proceeds from the sale of his Middle Valley Drive home toward the development costs. He also paid the costs of all the materials and labor and all the taxes and costs of maintaining the home.[2] Significantly, husband alone earned income during the marriage, wife having left employment in 1993. Under the pre-marital agreement, "income of all kinds, whether the same be earned or unearned" is defined as that income-earning party's separate property.

In contrast, the evidence fails to show that wife made any monetary contributions to the building of the Utterback Store Road house. Wife did not work outside the home during the marriage and had no income to contribute. Her separate assets before the marriage consisted of a Sovran Bank account with a value of $1,200. After the marriage, she jointly titled the Sovran Bank account, but presented no evidence that she used any funds from the account for the construction of the house. Wife liquidated her separate Kidder Peabody account, valued at $17,000, in the first year of the marriage and testified she deposited the proceeds into the parties' joint account, but she failed to establish the amount deposited and offered no evidence that any funds derived from her separate Kidder Peabody account were applied to the construction of the Utterback Store Road house. Husband testified that the funds from the Kidder Peabody account,

---

[2] In addition to financing the building of the home, husband paid all the taxes and the costs of maintaining the home and served as a laborer and general contractor for all aspects of its development and construction, from clearing and grading the lot to designing the house and pool. In short, he assisted with or oversaw every aspect of construction.

which wife testified had been deposited in the joint account, were used to help cover the loss from the sale of wife's condominium that she owned prior to the marriage and sold in the first year of the marriage.[3] His testimony on this issue was unrebutted. Rather, wife confirmed in her testimony that the funds in the joint account were used to cover the loss she suffered in the sale of her condominium. Finally, wife was the beneficiary of an irrevocable trust known as the Landres irrevocable trust, but presented no evidence that she made any requests for distributions that were applied to the construction of the house.[4]

On this record, we find the evidence establishes that the funds used to build the house came solely from husband's separate funds, derived from the income that he alone earned. Because the evidence establishes that husband's income was the only source of the funds used to construct the Utterback Store Road property, we find that the trial court erred in awarding wife any interest in the property. See Robinson v. Robinson, 46 Va. App 652, 664, 621 S.E.2d 147, 153 (2005) (*en banc*) ("[I]f the jointly-titled asset (or an identifiable portion of that asset), 'is retraceable by a preponderance of the evidence' to a separate asset, and the jointly-titled property 'was not a gift,'[5] then the portion of the asset retraceable to the separate property 'shall retain its original classification.'" (quoting Code § 20-107.3(A)(3)(f))). Accordingly, the trial court's award to wife of one-half the equity in the property is reversed, and we remand for further proceedings.

---

[3] Husband paid the remainder of the loss.

[4] Wife testified that she made non-monetary contributions to the development of the house including helping to design the theater room and discussing the kitchen cabinets and floor with her husband. At best, wife's contributions were limited and no evidence was presented to show the value, if any, of her contributions.

[5] Wife presented no evidence or argument of gift in this case.

- 11 -

## C. UBS account

Husband contends that the trial court erred in awarding wife fifty percent of the UBS account on the ground that the only source of the funds in the account was traced to his separate property. We agree.

Documents submitted into evidence by husband and wife show that the UBS account which was titled jointly with rights of survivorship, was established no later than January 2001, but that the parties maintained a zero balance in the account until October 31, 2008, when it showed a balance of $118,474.72. The trial court identified a joint account, the Brown & Company account, as the source of funds for the UBS account.[6] Wife presented no evidence that funds in her separate accounts or derived from her separate property were deposited into the joint Brown & Company account or to the joint Paine Webber account that preceded it. Wife's separate assets at the time of the marriage, consisting of an account in Sovran Bank and in Kidder Peabody, a condo, and beneficial interest in a trust, cannot be traced into the joint Brown & Company account. Furthermore, as noted earlier, wife stopped working outside the home in January 1993 and husband's income was the sole source of revenue throughout the marriage. In short, wife's evidence fails to show that any funds in the UBS account were traceable to her.[7]

On this record, we conclude that the funds in the UBS account, of necessity, came from husband's income, which, under the terms of the pre-marital agreement, was to be treated as his separate property. We reverse the trial court's award of half the UBS account to wife on the ground the evidence fails to support the award, and remand this issue to the trial court for further

---

[6] Two Brown & Company accounts were established, one in husband's sole name and one jointly titled.

[7] Moreover, under the terms of the pre-marital agreement, the parties agreed that either party's separate property would not, "by commingling or any other theory, be deemed to have been transmuted or converted to marital property such that it would be the subject of an Equitable Distribution claim."

proceedings. See McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008) (a trial court's monetary award will be overturned if there is a "'lack of evidence to support the award.'" (quoting Fowlkes v. Fowlkes, 42 Va. App. 1, 7, 590 S.E.2d 53, 56 (2003))).

## II. Procedurally Defaulted Issues

Husband's remaining assignments of error are procedurally defaulted.

## A. Line of credit

Husband argues that the trial court erred in holding him liable for the entire debt on the line of credit and ordering him to pay wife $331,294.

In his brief, husband asserts that the balance owed on the line of credit was less than $331,294, that the court should have credited him for the monthly payments he made from his separate funds that reduced the balance, and that no evidence showed he owed wife that amount. Husband cites no legal authority in support of these claims and, having failed to do so, the issue is waived. Rule 5A:20(e).[8] "If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention. Because the parties failed to do so, and because that failure is significant, they have waived their right to have these issues reviewed by this Court." Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) (citations omitted).

## B. Exclusion of certain documents from evidence

Husband listed as one of his assignments of error that the trial court erred in excluding from evidence certain bank account statements, wife's social security statements, and deposit slips. However, he did not present argument on this issue in his brief; therefore, the issue is

---

[8] Appellant's opening brief shall include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e).

waived.  See Muhammad v. Commonwealth, 269 Va. 451, 478, 619 S.E.2d 16, 31 (2005)

("Failure to adequately brief an assignment of error is considered a waiver." (citation omitted)).

### C.  Trial court's order to sell the Utterback Store Road property

Husband contends the trial court abused its discretion in ordering the Utterback Store

Road property to be sold.  However, no argument on this issue was presented in his brief;

therefore, the issue is waived.  Id.

### D.  Boat expenditures and loan payments

During the marriage, the parties purchased a boat, using loan proceeds.  The trial court

stated, "In terms of the boat loan, the Court declines to rule on the potential deficiency owed on

the boat loan, because there was insufficient evidence to prove any debt to the satisfaction of the

Court."  Husband's assignment of error on this issue is limited to his contention that the trial

court abused its discretion "by refusing to address the boat debt and excluding [his] evidence

regarding the amount of that debt."  He does not address the trial court's finding that he failed to

meet his burden of proof.

Husband did not comply with Rule 5A:20(e) in addressing his assignment of error.  His

opening brief does not cite to any principles of law or legal authorities that address the court's

finding that he failed to carry his burden of proof on the issue or that it erroneously excluded his

evidence.[9]  Husband has the burden of showing that reversible error was committed.  See Lutes

v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992).  It is not this Court's

"function to comb through the record . . . in order to ferret-out for ourselves the validity of

---

[9] Husband's reference by incorporation to the authorities cited in prior sections of his brief in support of his argument on this question is unavailing.  The authorities in the referenced prior sections relate only to principles of contract construction, the limitations placed on a court by the words of the instrument itself, and the standard on appeal for reviewing a lower court's equitable distribution award.  They do not relate to this assignment of error.

[appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*).

Finding that husband's failure to comply with Rule 5A:20(e) is significant, we will not consider the issues regarding the boat and its expenses. See Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

Finally, husband failed to object below that the trial court abused its discretion "by refusing to address the boat loan." The failure to preserve this issue in the court below precludes review on appeal. Rule 5A:18.

### E. Motion for declaratory judgment and motion *in limine*

Husband filed a motion for declaratory judgment and asked that the Utterback Store Road property be declared his separate property pursuant to the pre-marital agreement. The trial court denied his motion for declaratory judgment because the motion was "not the vehicle to use to attack [the classification issue]" and it "should be determined at the trial, the ED trial, and -- because it does determine an issue, a fact in dispute." Further, the trial court explained, "the contract, the prenup, is ambiguous and in conflict, and needs to be tried."

Husband later filed a motion *in limine* and argued that the parties waived equitable distribution in the pre-marital agreement. The trial court denied his motion *in limine* and entered an order permitting testimony on the intention underlying the provisions in the pre-marital agreement that addressed the application and/or waiver of equitable distribution proceedings in the event of divorce.

Husband argues that the trial court erred in denying his motion for declaratory judgment. In his brief, husband merely states that the trial court erred, but provides no authority that supports his contention that the issues in this case were proper subjects of a declaratory judgment motion and that the court erred in declining to entertain the motion. See USAA Cas. Ins. Co. v.

- 15 -

Randolph, 255 Va. 342, 497 S.E.2d 744 (1998); Miller v. Jenkins, 54 Va. App. 282, 678 S.E.2d 268 (2009).

Husband also contends the trial court erred in denying his motion *in limine*. However, husband cites no authority setting forth the relevant standard and principles that govern our review of whether the trial court erroneously denied the motion *in limine* and improperly excluded evidence. See, e.g., Riverside Hosp., Inc. v. Johnson, 272 Va. 518, 528-29, 636 S.E.2d 416, 421-22 (2006).[10] Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) (citations omitted). This Court "will not search the record for errors in order to interpret the appellant's contentions and correct deficiencies in a brief." Id. (citations omitted).

Therefore, we will not consider these assignments of error.

CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.

---

[10] Whether to grant a motion for declaratory judgment or a motion *in limine* is wholly unrelated to contract construction principles and the exercise of judicial discretion in making an equitable distribution award, the subject of husband's citation to authorities in prior sections of his brief and which he incorporates by reference in support of this assignment of error.

McCullough, J., concurring, in part, and dissenting, in part.

I join the majority in full with respect to part I of the opinion. I respectfully disagree with the conclusion in part II of the opinion that some of husband's arguments are procedurally defaulted.[11] I would address those contentions on the merits.

Courts, including appellate courts, cannot function without rules. Under the rules that govern this Court, a litigant must shoulder the burden of establishing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Under Rule 5A:20(e), a brief must specify, "[w]ith respect to each assignment of error, the standard of review and the argument – including principles of law and the authorities . . . ." There are sound reasons for these rules. In an adversarial system of justice, it is not the role of a court to "search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*). In short, because the judgment of the trial court is presumed to be correct, it is not too much to ask a litigant to supply the appellate court with the argument and the authority needed to show the presence of prejudicial error. In the matter before us, however, I find no violation of those rules.

---

[11] Like the majority, I can find no argument in support of assignment of error 11 ("The trial court abused its discretion by excluding from evidence bank account statements, Plaintiff's social security earnings statements, and deposit slips."). Therefore, I agree that the assignment of error is procedurally defaulted. With regard to assignment of error 8 ("The trial court abused its discretion by ordering the Utterback Store Road real estate to be sold."), although husband does not offer a discrete section in his brief discussing this assignment of error, and assuming this omission violates the rules, I find no "significant" breach of the rules because the assignment of error turns entirely on arguments made extensively throughout the brief regarding ownership of the Utterback Store Road property.

With respect to the denial of his declaratory judgment motion and his motion *in limine*, husband contends that the trial court erred in denying those motions "[f]or the reasons set forth above in Sections D(1)(a)-(d)." This sort of incorporation by reference in an appellate brief is entirely permissible, even if it may occasionally make for awkward reading. I have no "difficulty ascertaining the exact arguments that [husband] has incorporated by reference." Lenz v. Warden of the Sussex I State Prison, 265 Va. 373, 377, 579 S.E.2d 194, 195 (2003). Although I do not find the argument defaulted, however, I would reject the argument for the same reason that we reject husband's reading of the "unless" clauses of the agreement as detailed in the majority opinion.

Husband's contention with respect to the equity line of credit is that the agreement controls these debts and that under that agreement, wife must pay her share of those debts. In the opening section of the brief, on pages 10-12, husband sets forth, accurately and in detail, the principles that govern the construction of premarital agreements as well as the appellate standard of review. Therefore, I find no procedural default simply because these cases are not reiterated later in the brief.

Turning to the merits, it is clear that the entirety of the outstanding balance is attributable to husband. Under Section III(C) of the agreement, unless it is clearly established that the parties are "joint owners of the property," all property acquired during the marriage is separate property. Under Section IV of the agreement, "all obligations and liabilities incurred during the marriage in connection with the purchase, acquisition, maintenance or disposition of the separate property of either party . . . shall be paid from separate property or funds of the parties." Husband used this line of credit to purchase cars and a motorcycle that belonged to him. That does not, however, end the inquiry. Husband owes this debt to Bank of America. The amount of the debt was $314,000. The trial court ordered husband to pay $331,294 *to wife*. In my view, the trial

court erred in ordering husband to pay this sum to wife rather than to the bank, and in ordering payment of an amount that exceeds the balance due. On this point, I would reverse the judgment of the trial court.

Finally, with regard to the boat loan and expenditures, for the same reasons noted above, I do not find that husband's argument is procedurally defaulted. I find no error by the trial court with regard to the boat loan or expenditures made in connection with the boat. The trial court found insufficient evidence that any debt existed. Wife testified that the boat debt had been "charged off." Although husband expressed a "concern" about this debt, the trial court, in weighing the evidence, readily could conclude that husband had not carried his burden of proof of showing the existence of a debt. With respect to expenditures made in connection with the boat, husband offers no persuasive reason why wife should owe husband any money on those past expenditures.